### George F. Harding, et al., v. Adelaide M. Harding.

#### Gen. No. 12,180.

1.  ALIMONY—*power of court to enforce decree for.*  A court of chancery granting a decree for alimony has ample power to enforce that decree when enforcement is possible; and this, by the appointment of a receiver in a proper case, and likewise, if expedient, by injunction, either through a petition filed in the same suit or by separate bill filed in the court which granted the decree. The proceeding by separate bill is peculiarly appropriate where it is essential to join new parties.

2.  APPLICATION OF PAYMENTS—*how made.*  When a debtor makes a payment without specifying on what debt it was to be applied, the creditor has a right to select the debt on which he will give the credit.

3.  CREDITOR'S BILL—*what not.*  A proceeding to enforce a decree for alimony is not a creditor's bill in a technical sense and the exhaustion of the legal remedy need not be shown as a prerequisite to relief.

Appeal from interlocutory order of injunction. Appeal from the Circuit Court of Cook County; the Hon. MURRAY F. TULEY, Judge, presiding. Heard in this court at the October term, 1904. Affirmed. Opinion filed March 13, 1905. Rehearing denied March 27, 1905.

**Statement by the Court.** This is an appeal from an interlocutory order of injunction granted on a bill filed by appellee against George F. Harding, Abner C. Harding, George F. Harding, Jr., Gregory T. Van Meter, Chicago Real Estate, Loan & Trust Company, First National Bank of Chicago, National Safe Deposit Company, John L. Czweck, the Glucose Sugar Refining Company, the Corn Products Company, John S. Miller and Merritt Starr.

The following facts, in substance, are averred in the bill: July 26, 1897, the Circuit Court of Cook County, in a cause in which appellee was complainant and George F. Harding, defendant, entered a decree that said George F. Harding should pay to said complainant $6,400 per annum, payable in equal monthly installments until further order, as and for her separate maintenance; and should also, within twenty days from the entry of said decree, pay to said complainant $8,156.61, as and for the separate maintenance of the daughters of said complainant and George F. Harding, and should also, within said time, pay to said complainant the further sum of $996.47, paid out or incurred by her in the prosecution of her said suit; also, that said George F. Harding should pay to said complainant, or her solicitors, within said twenty days, the further sum of $8,000.

On appeal to the Appellate Court for the First District said decree was modified, by reducing said sum of $6,400 to $3,600 per annum, to be paid in monthly installments of $300 each, and the decree was, in all other respects, affirmed. December 8, 1899, the Circuit Court entered an order modifying its decree of July 26, 1897, to correspond with said judgment or decree of the Appellate Court. Complainant caused a transcript of said decree, so modified, to be filed in the offices of the clerks of the Circuit Courts of Winnebago, McDonough, Henderson, Mercer and Warren Counties, in this State.

May 27, 1900, none of said sums decreed to be paid as aforesaid, nor any part thereof, having been paid, and there remaining unpaid, including interest, $30,497.39, complainant caused to be issued and delivered to the sheriff of Cook

County an execution, which, September 20, 1900, said sheriff returned no property found and no part satisfied. June 22, 1900, complainant caused execution to be issued and delivered to the sheriff of Winnebago County, which, September, 20, 1900, said sheriff returned no property found and no part satisfied. Also, June 22, 1900, complainant caused to be issued and delivered to each of the sheriffs of McDonough, Henderson and Mercer Counties an execution, which executions were returned by said sheriffs, respectively, no part satisfied. Also, June 22, 1900, complainant caused to be issued and delivered to the sheriff of Warren County a like execution, which said sheriff levied on certain real property of George F. Harding in said county, and offered the same for sale and received only one bid therefor, namely, $15.75, for which sum said real property was sold, and said sum applied in payment of costs, and said sheriff returned said execution, no part satisfied.

Since May 27, 1900, George F. Harding has paid to complainant small sums at different times, the total of which is in excess of $300 per month since said date, and said George F. Harding not having directed how said payments should be applied, complainant applied them on the current sums due her, and not on the amount due her on May 27, 1900, except the excess aforesaid, which complainant applied on the amount due her May 27, 1900, and which said excess so applied reduces the amount due complainant to $29,272.98.

December 12, 1901, it was adjudged and decreed that George F. Harding pay to complainant, or to her solicitors, John S. Miller and Merritt Starr, $5,000, as solicitors' fees, and $166.28 for disbursments since July 26, 1897, no part of which sums has been paid; and February 8, 1904, complainant assigned to said Miller and Starr the said sums and also the sum of $8,000 decreed to be paid to complainant or her solicitors, by the decree of July 26, 1897. June 10, 1896, George F. Harding, for the expressed consideration of $5,000, quit-claimed to the Chicago Real Estate Loan & Trust Co., defendant, all lands and lots owned by him in the State of Illinois, which conveyance was, July 2,

1896, recorded in the recorder's office in Cook County, Illinois, but not elsewhere in said State. Said Chicago Real Estate, Loan & Trust Co. is an Illinois corporation, the original name of which was Peoria Starch Manufacturing Co., which name was subsequently changed to the Chicago Real Estate, Loan & Trust Co. It is pretended that George F. Harding owns only one share of the stock of said corporation, and that George F. Harding, Jr., is the owner of a majority of said stock, and that he purchased the same from George F. Harding, the former owner thereof; but complainant is informed, believes and charges the fact to be that the ownership of said stock by George F. Harding, Jr., is only colorable and for the purpose of defrauding complainant and other creditors; that the said stock really belongs to George F. Harding, and that he manages and controls said corporation through the defendant George F. Harding, Jr., and conceals the affairs of said corporation by frequent changes of its officers and directors, who, in most instances, are clerks or employes of George F. Harding, Jr., and mere dummies to carry out the directions of said George F. Harding, given by himself or George F. Harding, Jr. At the time of the execution of said conveyance by George F. Harding to the Chicago Real Estate, Loan & Trust Co., George F. Harding was the owner of the following described property, situated in the State of Illinois and other States : (Here follows a long list of lots and lands.) Although the title to most or all of said real property is in the name of the Chicago Real Estate, Loan & Trust Company, George F. Harding is the actual and beneficial owner thereof. All of said property is encumbered by mortgages, real or pretended. Nearly all of said real property in Cook County is improved and is producing a large income, and the farming lands and town and city lots, in counties other than Cook, are, in most instances, improved and produce, in the aggregate, a large income. George F. Harding has failed to keep said improved property in good repair and condition, and has allowed the same to run down and deteriorate, whereby the rents have

become reduced, etc., for the purpose, as complainant has been informed and believes, of defrauding her, and preventing the collection of the money due her. The interest on most of said mortgages has not been paid and much of the same is in arrears, and, in large portions of said property, the taxes have not been paid, and the property has been sold for taxes, and unless a receiver shall be appointed, said property is in danger of being lost. The Peoria Starch Manufacturing Co., the name of which was changed, as aforesaid, being under the control of George F. Harding, by reason of his ownership of most of its stock, sold all its property to the American Glucose Co. for 2,035 shares of the stock of said Glucose Company, of the par value of $100 per share. Subsequently the capital stock of said American Glucose Company was so reduced that the shares of George F. Harding were reduced to 203.5, of the par value of $100 each. In 1897 a number of corporations engaged in the manufacture of glucose and the products of corn, including the American Glucose Co., formed the scheme of creating a great combination or trust, whereupon George F. Harding and the Chicago Real Estate, Loan & Trust Co. filed a bill in the Circuit Court of Peoria County against said American Glucose Co., its officers, directors and stockholders, averring that said George F. Harding was the owner of 203.5 shares of the capital stock of said American Glucose Co., subject to the rights of the Chicago Real Estate, Loan & Trust Co., and that said proposed combination or trust was unlawful, as being in restraint of trade and for the purpose of creating a monopoly. The Circuit Court of Peoria County dismissed the bill for want of equity, but the Supreme Court, on writ of error, reversed the decree of said Circuit Court, and held that said proposed combination or trust was void, and directed said Circuit Court to enter a decree setting aside the deed of the American Glucose Co. conveying its plant, etc., and, thereupon, the promoters of said combination or trust, in order to eliminate the opposition of George F. Harding, and consummate said combination, delivered to George F.

Harding 5,000 shares of the capital stock of the Glucose Sugar Refining Co., of the par and market value of $100 each, in exchange for the said 203.5 shares of stock of the American Glucose Co. Defendants pretend that said 5,000 shares were received by George F. Harding for the Chicago Real Estate, Loan & Trust Co., but complainant charges that they are the property of George F. Harding, and that such pretentions are merely for the purpose of defrauding complainant. The defendant John L. Czweck, an employe of George F. Harding or George F. Harding, Jr., and who is under their domination and control, was, at or soon after the receipt by George F. Harding of said 5,000 shares, the secretary of the Chicago Real Estate, Loan & Trust Co., and pretended to have the custody of the certificates of said shares, but said certificates were deposited in the safety deposit vaults of the National Safety Deposit Co., in a box rented, or caused to be rented, by George F. Harding, Jr., in whose name complainant is not advised, the key of said box to be retained by George F. Harding, Jr., so that said certificates were wholly under his control. Complainant is informed and believes that George F. Harding and George F. Harding, Jr., have caused said shares, or some of them, to be exchanged for the shares of stock of other corporations, and have caused the certificates of shares so received in exchange to be deposited with the National Safety Deposit Co., and have also pledged with the defendant the First National Bank of Chicago, certain certificates of shares of the stock of the Glucose Sugar Refining Co. as security for certain loans made by said defendant bank to George F. Harding, George F. Harding, Jr., or the Chicago Real Estate, Loan & Trust Co.; but said George F. Harding is the beneficial owner of said shares of stock, subject to any equities of said bank, and the possession and control thereof by said George F. Harding, Jr., and John L. Czweck are an attempted fraud on the rights of complainant. Then follow general averments such as are usual in an ordinary creditor's bill; also, charges of conspiracy of the defendants George F. Harding, George F. Harding, Jr.,

Abner C. Harding, Gregory T. VanMeter and John L. Czweck, to conceal and cover up George F. Harding's property, for the purpose of defrauding complainant and preventing her from collecting the moneys due her.

The bill avers reasons why an injunction should be granted without notice, prays that some of the defendants, naming them, may answer under oath, and that others, naming them, may answer, without oath, certain interrogatories to be answered by defendants named, prays for an injunction and the appointment of a receiver, and for general relief. The court, on recommendation of a master, ordered a temporary injunction to issue, as prayed. The bill is sworn to.

William H. Barnum, for appellants.

Pliny B. Smith, for appellee.

Mr. Justice Adams delivered the opinion of the court.

The interlocutory or preliminary injunction having been granted solely on the verified bill, the foregoing statement of the contents of the bill is necessary to an understanding of the case. The contention of appellants' counsel is, that the bill is merely a creditor's bill and must be regarded as exclusively such, and that, considered as a creditor's bill, it is bad in not showing that the complainant has exhausted her legal remedies. While many and perhaps most of the averments of the bill are such as would be appropriate in a creditor's bill, yet they tend to show the impracticability, if not impossibility, of complainant collecting the alimony decreed to be paid to her, without the aid of the court, and, therefore, are pertinent if the bill is to be regarded as a bill to enforce the alimony decree, as contended by appellee's counsel. But counsel for appellant says that the bill cannot be sustained as a bill to enforce the decree, for the reason that an application for enforcement of a decree for alimony must be made to the court which entered the decree, and that the bill was not filed in the court which entered the alimony decree. We concur in the proposition

that an application to enforce a decree for alimony must be made to the court which granted the decree; but not in the contention that the present bill was not filed in the court which granted the decree. The contrary appears from the bill itself, to which alone we can look. The bill was filed in the Circuit Court, as the record shows, and it is expressly averred in it: "That, on the 26th day of July, 1897, *this* court, in a certain cause then pending in *this* court, wherein your oratrix was complainant and the said George F. Harding was defendant, entered a decree wherein and whereby it was ordered, adjudged and decreed that the said George F. Harding should pay to your oratrix," etc. Then follows a statement of the original decree, the appeal to this court, the modification of the decree, etc., as shown in the statement preceding this opinion. Thus it appears from the record before us, that the present bill was filed in the same court which granted the alimony decree. Even though it should be erroneously contended that the application for enforcement of the decree should be made before the judge who presided in the court when the decree was rendered, the record would not support the contention, as it is silent in that regard. We cannot presume, however, that the learned counsel for appellant would so contend. That the court granting a decree for alimony has ample power to enforce the decree, when enforcement is possible, there can be no question. Hurd's Rev. Stat. 1903, C. 22, sections 42 and 47; Blake v. The People, 80 Ill. 11; Wightman v. Wightman, 45 Ib. 167; Becker v. Becker, 15 Ill. App. 247; Bishop on Marriage, Divorce, etc., parag. 1089, *et sequens.*

In Wightman v. Wightman, *supra*, the court say: "We have no doubt a court of chancery has power, in addition to making a decree for alimony a lien on the lands of the defendant, which it would be without a decree to that effect, to enforce the decree by attachment for contempt, and if the defendant remains contumacious, defying the court, may also sequester his estate." .

In Blake v. The People, *supra*, it is said: "It is ap-

prehended that decrees for alimony may be enforced by execution or other final process, as other decrees in chancery, or any other mode consistent with the practice in the courts of chancery; but, as cumulative remedies, no doubt, the court may enforce decrees for alimony 'either by sequestration of real or personal estate, by attachment against the person, by fine or imprisonment, or both, in the discretion of the court,' as other decrees in chancery may be enforced."

The court may appoint a receiver in a proper case, and, in the meantime, may enjoin alienation of the defendant's property, until fully advised as to whether a receiver should be appointed. Carey v. Carey, 2 Daly (N. Y.), 424. Even pending a bill for divorce, or separate maintenance, the husband may be enjoined from alienating his property. Springfield M. & F. Ins. Co. v. Peck, 102 Ill. 265, 269. *A fortiori*, this is true when alimony has been decreed.

It is usual to proceed by petition, in the same suit, when the aid of the court to enforce a decree for alimony is sought; but we perceive no objection to proceeding by bill, especially when necessary to bring in new parties, as in the present case, and we think the bill in question may well be considered as incidental or supplemental to the bill for separate maintenance, or at least as a petition in the separate maintenance suit.

Appellants' counsel contend that complainant was legally bound to apply all payments made by defendant George F. Harding since May 27, 1900, on the arrearages of alimony due prior to and at that date. " The law is well settled that when a debtor makes a payment without specifying on what debt it shall be applied, the creditor has a right to select the debt on which he will give the credit." McFarland v. Lewis, 2 Scam. 345; Hare v. Stegall, 60 Ill. 380; Wilhelm v. Schmidt, 84 Ib. 183.

The bill avers that the defendant George F. Harding, gave no direction as to how the payments made should be applied, and that complainant applied them to the monthly installments of alimony accruing due after May 27, 1900, which she had a right to do. The defendant the First

National Bank of Chicago, is enjoined "from permitting said defendants to withdraw or remove from your custody any money or other valuable thing, or things, on deposit with you, or held· by you to the credit of the said defendants, or any of them." In regard to this part of the injunction, counsel for appellants say: "The effect on the bank is to drive off and keep away its customers, since none of the other appellants is very likely to put any more of his money, stocks and securities into its keeping, subject to the operation of the injunction." The bill refers to nothing deposited with the First National Bank except shares of stock, and we do not think the injunction can be construed, so far as the bank is concerned, as applying to anything else. If any of the defendants to the bill has an account with the bank, or money deposited in it to his personal credit, which money belongs to such defendant, and in which the defendant George F. Harding has no interest, the Circuit Court will, without doubt, on proper showing, modify the injunction as to such defendant. In view of the facts stated in the bill and the legal principles applicable thereto, we are of opinion that the court did not err in granting the injunction.

Inasmuch as we think the bill maintainable as a bill or petition for the enforcement of the alimony decree, it is unnecessary to express any opinion as to whether it can be maintained as a creditor's bill.

The order granting the injunction will be affirmed.

*Affirmed.*