Argued 10 December, 1903; decided 11 January, 1904.

## WHITE v. MEARS.

[74 Pac. 931.]

OFFICERS—TERM OF SAILORS' BOARDING HOUSE COMMISSIONERS.

1. The commissioners for licensing sailors' boarding houses, appointed by the legislature (Laws 1903, p. 238), hold their office at the pleasure of the appointing power during four years, unless sooner removed, so that, even if they are officers whose positions are created by the legislature, they are not holding in violation of Const. Or. Art. XV, § 2, prohibiting the creation of any office the tenure of which shall be longer than four years.

OFFICERS—SAILORS' BOARDING HOUSE COMMISSIONERS ARE AGENTS.

2. The commissioners appointed under the act of 1903 to license sailors' boarding houses (Laws 1903, p. 238), are not officers whose term is limited by Const. Or. Art. XV, § 2, inasmuch as they receive no compensation, but are only ministerial agents of the State.

STATUTES—LOCAL LAW FOR PUNISHMENT OF CRIMES.

3. The statute creating the board of commissioners for licensing sailors' boarding houses, and prohibiting the carrying on of such business at any point in Oregon situated on the Willamette or Columbia rivers, without a license (Laws 1903, p. 238), should be liberally construed to accomplish the beneficial public purposes of the act, and may be interpreted to mean that no unlicensed sailors' boarding house shall be conducted in Oregon to harbor or provide seamen for ships while in the Willamette or Columbia rivers. Thus interpreted, the law does not violate Const. Or. Art. IV, § 23, subd. 2, which forbids special or local laws for the punishment of crimes and misdemeanors.

CONSTITUTIONAL LAW—SPECIAL PRIVILEGES.

4. The statute of 1903 providing for licensing sailors' boarding houses (Laws 1903, p. 238), considered as a whole, does not authorize the board of commissioners arbitrarily to create a monopoly in the business of boarding and furnishing sailors in Oregon, as prohibited by Const. Or. Art. I, § 20.

REVIEW—SAILORS' BOARDING HOUSE COMMISSIONERS.

5. The commission for the licensing of sailors' boarding houses is an "inferior tribunal" whose decisions within its power may be reviewed by a writ under Section 597, B. & C. Comp.

From Multnomah : JOHN B. CLELAND, ALFRED F. SEARS, JR., and MELVIN C. GEORGE, Judges, in joint session.

This is a suit by Harry White and "Mysterious" Billy Smith against S. M. Mears and others, constituting the board of commissioners for licensing sailors' boarding houses, to enjoin interference with the keeping of a sailors' boarding house, on the ground that the act under which the commissioners are acting (Laws 1903, p. 238), is unconstitutional. From a decree sustaining a demurrer to the complaint, plaintiffs appeal.          AFFIRMED.

For appellants there was a brief by *Mr. Wilson T. Hume* to this effect:

I. The act is void for the reason that it creates a board of commissioners who are officers of the State, with an unlimited term of office, in violation of Const. Or. Art. XV, § 2.

II. The act is void because it is a local law providing for the the punishment of misdemeanors, in violation of Const. Or. Art. IV, § 23: *Ladd* v. *Holmes*, 40 Or. 167 (91 Am. St. Rep. 457, 66 Pac. 714); *Ellis* v. *Frazier*, 38 Or. 462 (53 L. R. A. 454, 63 Pac. 642); *Maxwell* v. *Tillamook County*, 20 Or. 495 (26 Pac. 803).

III. The act is void for the reason that it invests the board with legislative functions and with arbitrary power, in violation of Const. Or. Art. I, § 20, and Art. IV, § 1, and also of Const. U. S. Amend. XIV: *Harmon* v. *State ex rel.* 66 Ohio St. 299 (58 L. R. A. 618, 64 N. E. 117); *State* v. *Conlon*, 65 Conn. 478 (31 L. R. A. 55, 48 Am. St. Rep. 227, 33 Atl. 519); *Ex parte Sing Lee*, 96 Cal. 354 (31 Am. St. Rep. 218, 24 L. R. A. 195, 31 Pac. 245); *Yick Wo* v. *Hopkins*, 118 U. S. 356 (6 Sup. Ct. 1064); *In re Wo Lee*, 26 Fed. 471; *City of Richmond* v. *Dudley*, 129 Ind. 112 (13 L. R. A. 587, 28 N. E. 312); *Noel* v. *People*, 187 Ill. 587 (79 Am. St. Rep. 238, 58 N. E. 616).

IV. The law being invalid, equity has jurisdiction to enjoin threatened arrests: *Barther* v. *City*, 29 Fed. 563; *Tuchman* v. *Welch*, 42 Fed 548; *M. Schandler Bottling Co.* v. *Welch*, 42 Fed. 561; *Central Trust Co.* v. *Citizens' St. Ry. Co.* 80 Fed. 218; *People* v. *Canal Board*, 55 N. Y. 390; *Wood* v. *Brooklyn*, 14 Barb. 425; *Hall* v. *Shultz*, 31 How. Pr. 231; *Nelson* v. *State Board of Health*, 22 Ky. Law Rep. 438 (50 L. R. A. 382).

For respondents there was an oral argument by *Mr. Henry E. McGinn*, with a brief over the names of *Henry E. McGinn* and *Charles McGinn, Jr.*, to this effect:

(1) The language of the constitution seems to be conclusive in support of the position that an office may be created by law, though its duration be not fixed: Const. Or. Art. XV, § 2; *Clem* v. *State*, 33 Ind. 418–423; *Indianapolis Brewing Co.* v. *Claypool*, 149 Ind. 201 (48 N. E. 228). Nor are the members of the board state officers: *State ex rel.* v. *George*, 22 Or. 142 (29 Am. St. Rep. 586, 29 Pac. 356); *David* v. *Portland Water Co.* 14 Or. 98 (12 Pac. 174).

(2) The law is not special legislation for the punishment of misdemeanors, simply because it adds a penalty for an infraction, the penalty is a mere incident: *Ex parte Northrup*, 41 Or. 489 (69 Pac. 445, 55 Cent. L. Jour. 149); *Ladd*

v. *Holmes*, 40 Or. 167–174 (91 Am. St. Rep. 457, 66 Pac. 714).

(3) The legislature has ample power to regulate any and every business that is open to all citizens, and to prohibit, if it chooses, any business inherently injurious or dangerous to the public. In the latter cases the legislature is the judge of the degree of danger and of the required protection. In one business all citizens have the right, and an equal right, to engage; in the other no citizen has an absolute right to engage: Cooley, Torts, *276–278; Cooley, Const. Law (6 ed.), 596; *State* v. *Conlon*, 65 Conn. 478, 486 (48 Am. St. Rep. 227, 31 L. R. A. 55, 33 Atl. 519); *Plumb* v. *Christie*, 103 Ga. 686 (42 L. R. A. 181, 30 So. 759); *Decie* v. *Brown*, 167 Mass. 290 (45 N. E. 765); *Ex parte Hoover*, 30 Fed. 51; *Humes* v. *City of Ft. Smith*, 93 Fed. 857; *L'Hote* v. *New Orleans*, 177 U. S. 587 (20 Sup. Ct. 788); *Ex parte Tuttle*, 9 Cal. 589; *Crowley* v. *Christensen*, 137 U. S. 86 (11 Sup. Ct. 13).

MR. CHIEF JUSTICE MOORE delivered the opinion.

This is a suit to enjoin interference with the keeping of a sailors' boarding house. The complaint states that prior to the passage of an act creating the board of commissioners for licensing sailors' boarding houses the plaintiffs were engaged in conducting such a house at Portland, Oregon; that on July 2, 1903, they applied to the board for a license, presented satisfactory evidence of their qualifications and of the suitableness of their accommodations to keep sailors, and offered to comply with the provisions of the act referred to, but the board refused them a license; that the defendants, the members of the board, the prosecuting attorney for the Fourth Judicial District, the harbor master of Portland, and the peace officers of Multnomah County, threaten to and will, unless restrained, cause the plaintiffs to be arrested and prosecuted if they continue to keep their house without a license; that the act in ques-

tion violates the state constitution in certain specified particulars, and that in denying the license the board discriminated against the plaintiffs. A demurrer to the complaint on the ground that it did not state facts sufficient to entitle plaintiffs to the relief demanded having been sustained, the suit was dismissed, and they appeal.

1. The statute creating this board and appointing its members not having prescribed their terms of office (Laws 1903, p. 238), it is contended by plaintiffs' counsel that section 2 of article XV of the state constitution is violated, and hence the court erred in sustaining the demurrer. The clause claimed to have been so infringed is as follows: "When the duration of any office is not provided for by this constitution, it may be declared by law; and if not so declared, such office shall be held during the pleasure of the authority making the appointment. But the legislative assembly shall not create any office, the tenure of which shall be longer than four years." In *David* v. *Water Committee*, 14 Or. 98 (12 Pac. 174), an act of the legislative assembly created the office and named the members of the "water committee" of Portland, who were authorized to select commissioners some of whose terms exceeded four years; and it was held that the persons selected in pursuance of the authority conferred were the agents of the city, and that the act did not violate the section of the constitution under consideration. In the case at bar, however, the commissioners for licensing sailors' boarding houses are evidently not the agents of any municipality. In *People* v. *Perry*, 79 Cal. 105 (21 Pac. 423), the legislative assembly of California passed an act creating a board of health, fixing the term of the officers thereof at five years, and providing that the Governor should appoint its members; and it was held that, as the authority of the board was not limited to any particular county, so much of the act as prescribed the term of office at five years was

in conflict with the clause of the constitution of that State then in force, almost identical with ours, and that, the legislature not having validly prescribed their tenure of office, the term was at the pleasure of the appointing power. So, too, in *Lewis* v. *Lewelling*, 53 Kan. 201 (36 Pac. 351, 23 L. R. A. 510), it was held that where a statute fixes the term of office at such a length of time that it is unconstitutional, or the tenure thereof is not declared by law, the office is held only during the pleasure of the appointing power. Though the members of the board of commissioners for licensing sailors' boarding houses are designated by the act creating their office, they may be removed and vacancies filled by a state board composed of the Governor, Secretary of State, and State Treasurer, who may make such removals at any time for cause, which must be stated in the order therefor; but as the legislative assembly did not delegate authority to make such appointments, except in case of removals for cause or on account of vacancies, the power of selecting the successors of the commissioners was evidently retained by it. The limit of four years, the tenure of an office created by the legislative assembly, not having elapsed since the appointment of the commissioners, if it be assumed that they are officers, within the meaning of the term as used in the clause of the constitution under consideration, it is not necessary to inquire what would be the effect of a failure to name their successors within the time prescribed, for they have a valid tenure for that time unless sooner removed.

2. No salary, fees, or other emoluments having been provided as compensation to the commissioners for the performance of the duties enjoined upon them, it would seem, however, that they are not officers whose term is prescribed by the organic law, but are ministerial agents of the State, invested with authority to exercise a measure of its police power, and therefore have an unlimited tenure,

unless it is subsequently changed by the appointing power. We conclude that the commissioners are holding office in pursuance of the pleasure of the legislative assembly, and that the act is not violative of the clause of the constitution invoked to defeat it.

3. It is insisted by plaintiffs' counsel that the act creating the board is void on the ground that it is a local law providing for the punishment of a misdemeanor, in violation of section 23 of article IV of the state constitution. The section of the fundamental law referred to is, so far as deemed applicable, as follows: "The legislative assembly shall not pass special or local laws in any of the following enumerated cases, that is to say, * * (2) for the punishment of crimes and misdemeanors." The act under consideration provides, in effect, that no person, firm, or corporation shall be permitted to keep, conduct, or carry on, at points situated on the Willamette and Columbia rivers, within the State of Oregon, as owner or agent, a sailors' boarding house, or hotel where sailors are boarded, lodged, or harbored, without first having obtained a license therefor, and any person, firm, or corporation attempting to conduct such a house without procuring a license shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be subject to a fine, etc. Though it is now impossible for ships to reach points on the Columbia and Willamette rivers in Oregon above the boundaries of Multnomah County, the act under consideration would by its terms seem to be applicable to and to obtain in fifteen of the thirty-three counties of the State, to wit: Umatilla, Gilliam, Sherman, Wasco, Multnomah, Columbia, and Clatsop, that border on the Columbia River, and also in the counties of Lane, Linn, Benton, Marion, Polk, Yamhill, and Clackamas, through which the Willamette River flows or forms a boundary. If the act in question be construed to mean the furnishing of seamen on board ships,

it would necessarily apply only to Clatsop, Columbia, and
Multnomah counties, thereby impliedly permitting sailors'
boarding houses to be kept, conducted, and carried on in
every other county of the State except those that border
on the Columbia and Willamette rivers which could be
reached by ocean vessels.  To give the language of the act
such a limited interpretation would nullify its salutary
provisions, for a sailors' boarding house might be located
in Washington County, but a few miles from the City of
Portland, the head of navigation on the Willamette River,
and there maintained with impunity, if the masters of
seagoing vessels went to and secured from such boarding
house their seamen.  In view of the harm intended to be
eradicated, and of the benefit sought to be secured, by the
passage of the act, its language should be liberally con-
strued; and, giving to it such interpretation, we believe it
means that no person, firm, or corporation, without hav-
ing first procured a license, shall keep, conduct, or carry
on, in the State of Oregon, a sailors' boarding house or
hotel, or to board, lodge, or harbor seamen to be furnished
to or for ships while in the Columbia or Willamette rivers.
By giving to the act the construction so announced, it is
general in its operation, and applies alike to the entire
class of persons within the State, who are or may be en-
gaged in the business sought to be regulated; and hence
it does not, in our opinion, contravene the clause of the
constitution alleged to have been violated.

4. It is maintained by plaintiffs' counsel that the act in
question is void for the reason that it vests in the board
arbitrary power to grant or deny applications for licenses,
in violation of section 20 of article I of the organic law of
the State.  This section of the constitution is as follows:
"No law shall be passed granting to any citizen or class
of citizens, privileges or immunities which, upon the same
terms, shall not equally belong to all citizens."  It is ar-

gued that this clause is violated by section 3 of the act under consideration, authorizing the board to reject any application they may deem advisable. This section of the organic law of the State might be sufficient to defeat so much of the act as appears to authorize the rejection of a license deemed advisable if the language relied upon to render it obnoxious to the Constitution stood alone; but when it is read in connection with a prior clause of section 3 of the statute, requiring the board to issue a license upon the production of satisfactory evidence of the applicant's respectability and competency, the suitableness of his accommodations, and his compliance with the provisions of the act, the language is not, in our opinion, susceptible to the construction sought to be placed upon it. It must be assumed that the legislative assembly had in mind, and did not intend to violate, section 20 of article I of the constitution, when it passed the act under consideration. We think, if the board conclude from the evidence submitted that the applicant possesses the prescribed qualifications, has suitable accommodations for keeping sailors, and will comply with the provisions of the act, they must issue to him a license; and if they refuse to do so, under such circumstances, mandamus will lie to compel the performance of the duty enjoined by law upon them: B. & C. Comp. § 605. The right of the board to reject any application they may deem advisable is the power vested in them to deny a license when, from the evidence submitted, they conclude that the applicant does not possess the necessary qualifications, or that his accommodations for keeping sailors are not suitable, or that he will not comply with the provisions of the act. If, however, the evidence satisfactorily shows that he possesses these qualifications, has suitable accommodations, and will comply with the terms of the statute, the obligation imposed upon the board to issue the license is mandatory, for the act, in

referring to them, states: "They * * shall issue to said person * * a license." True, the law does not prescribe the degree of respectability or competency which the applicant must possess, nor does it specify what accommodations shall be deemed sufficiently suitable to entitle the issuance of a license; but it must be assumed that the board, acting as reasonable and prudent men, imbued with a sense of the duty to the public and to the applicant devolving upon them, will discharge that obligation fairly and fearlessly.

5. When they have done so, their rejection of an application for either of the reasons specified ought never to be disturbed; but, should they err in construing the law, their conclusion, being the exercise of judicial functions, is subject to review: B. & C. Comp. § 597.

Having concluded that the act in question does not violate the constitution of this State, nor the Fourteenth Amendment to the Constitution of the United States, we do not deem it necessary to discuss whether or not a court of equity will enjoin the prosecution of criminal actions; and hence the decree appealed from should be affirmed, and it is so ordered.                                          AFFIRMED.