Dutton v. Knoxville.

---

H. W. DUTTON *et al. v.* MAYOR AND ALDERMEN OF
KNOXVILLE.

*(Knoxville.   September Term, 1908.)*

1.  **MUNICIPAL CORPORATIONS.**  Ordinance prohibiting fore-
    stalling is valid under a charter authorizing such ordinance,
    when.

    Under its legislative charter (Acts 1907, ch. 207), giving the
    city the power to regulate the inspection of provisions, to
    restrain and punish forestalling and regrating of provisions,
    and to establish and regulate markets, the city of Knoxville
    possessed the power to prevent the unlawful raising of the
    prices of produce through forestalling and regrating by pass-
    ing an ordinance prohibiting the hawking of fruit, vegetables,
    poultry, or other products, from wagons, by others than those
    raising their own produce.

    Acts cited and construed:   Acts 1907, ch. 207.

    Cases cited and approved:  Nightingale's Case, 28 Mass., 168, 171;
    Louisville v. Roupe, 45 Ky., 593.

2.  **WORDS.**  "Forestalling" is buying victuals on the way to
    market to sell again at a higher price.

    "Forestalling" is the buying of victuals on their way to market
    before they reach it, with the intent to sell them again at a
    higher price.   (*Post, p.* 30.)

3.  **WORDS.**  "Regrating" is buying corn or other dead victual
    in any market to sell again therein.

    "Regrating" is the buying of corn or other dead victual in any
    market, and selling it again in the same market.   (*Post, p.*
    30.)

**4. MUNICIPAL CORPORATIONS.** Ordinance prohibiting hawking sales by others than producers is not invalid as an unlawful discrimination.

A city ordinance prohibiting the hawking of fruit, vegetables, poultry, or other products, from wagons, by others than those raising their own produce is not invalid as an unlawful and unjust discrimination, because those prohibited from selling belong to a distinct class from those permitted to sell; the first being those who would violate the law by forestalling and regrating the market, and the others being the producers of provisions who would sell them direct to the consumers. (*Post, pp. 28, 29, 33, 34.*)

**5. SAME.** Same. State and county license will not authorize the violation of a valid city ordinance.

A city ordinance prohibiting hawking sales by others than the producers is not inoperative because the State and county had granted a huckster's license to those prohibited from hawking in the city, since the license would not authorize the licensee to violate a valid city ordinance. (*Post, p. 34.*)

Commonwealth v. Fenton, 139 Mass., 195; Commonwealth v. Ellis, 158 Mass., 556.

---

FROM KNOX.

---

Appeal from the Chancery Court of Knox County.—
JOSEPH W. SNEED, Chancellor.

JOHN W. GREEN and F. M. DEARMOND, for complainants.

J. PIKE POWERS JR., for defendants.

Dutton v. Knoxville.

MR. JUSTICE NEIL delivered the opinion of the Court.

The complainants charge in their bill that they are hucksters, each engaged on his own account in selling from wagons direct to consumers in the city of Knoxville vegetables, butter, eggs, poultry, fruit, and other products of the farm, garden, and orchard; that each has a license from Knox county authorizing him to carry on the trade of a huckster, and has paid to the county the tax fixed by the legislature for carrying on business of this character; that each is a resident, citizen, and taxpayer of Knox county; that all of the complainants have been engaged in the business referred to for a long period of time, and many of them for years; that this business constitutes their only means of livelihood.

It is further alleged that the complainants buy the articles thus handled by them sometimes direct from the producer, and sometimes on the market; that they do not raise the articles themselves.

It is further alleged that the city of Knoxville affords the principal and practically the only market for the sale of their goods; that, when they took out their licenses from the county court of Knox county, they did so with a view to, and for the purpose of, selling to the people of the city of Knoxville; that a business of this character has been carried on, not only by themselves, but by others for years in the city of Knoxville without arrest.

It is further alleged that the city refused to permit them, or any of them, to  carry on the business referred

to inside the city limits; that whenever one of complainants begins to sell, or to offer his goods for sale, he is required to cease selling, and, if he persists, he is arrested; that complainants have offered to pay the city authorities, and have tendered to them money to pay for a huckster's license, and not only so, but have agreed to pay any reasonable tax the city might require of them; that the city, however, has refused to accept their money, or to issue licenses to them, and has warned complainants that, if they persist in selling, they will be arrested, and that some of the complainants have been arrested and fined; that the result of this condition of affairs is that the complainants' business has been destroyed, and they have lost their occupation and means of livelihood.

It is further alleged that the defendant, while refusing to permit the complainants to carry on the trade of hucksters inside the city limits, permits any person who grows his fruit or vegetables or raises his poultry or other produce on his own land to carry on the trade of a huckster from wagons in the city of Knoxville without license, and without hindrance.

It is further alleged that chapter 207, p. 755, Acts 1907, incorporating the city of Knoxville, expressly confers the power upon the city to license hucksters, hawkers, peddlers, grocers, merchants, etc.

It is further alleged that allowing persons who raise their own produce to sell the same from the wagons without license, and refusing to allow persons who do not raise the produce which they offer for sale the right

to sell from their wagons without license, is an unlawful and unjust discrimination between the complainants and the citizens last referred to.

It is further alleged that such ordinance of the city is void as in violation of the constitution of this State, and of the United States.

Thereupon the complainants asked for, and obtained an injunction to restrain the execution of the ordinance under which the city is acting.

To this bill the defendant city filed a demurrer, making several points, but we need only notice the following:

That the charter referred to in the bill gave to the city the power "to regulate the inspection of milk, butter and lard, and other provisions and fish and vegetables; to restrain and punish forestalling and regrating of provisions; to establish and regulate markets," and that the right exercised by the city falls within the provisions of the charter just quoted, particularly within the provision against "forestalling and regrating," that the complainants and persons who raise their own produce are not in the same class, but are in a different class, and a discrimination between the two is reasonable and natural.

We think the chancellor acted correctly in sustaining the demurrer.

The city had the right under its charter to protect its inhabitants against the unlawful raising of the price of the necessaries of life, such as would naturally result

from the practice of forestalling the market by persons who would buy from the producers of market products for the purpose of resale within the city. "Forestalling" is defined: "Buying victuals on their way to market before they reach it, with intent to sell again at a higher price." 1 Bouv. L. Dict., p. 677. "Regrating" is the buying of corn or other dead victual in any market, and selling it again in the same market, since this enhances the price of the provisions, as every successive seller must have a successive profit. 4 Black. Com. In *Nightingale's Case,* 28 Mass., 168, an ordinance was sustained reading as follows: "That no inhabitant of the city of Boston, or any town in the vicinity thereof, not offering for sale the produce of his own farm, or of some farm in his neighborhood, shall at any season of the year, without permission of the clerk of Faneuil Hall Market, be suffered to occupy any stand with cart, sleigh, or otherwise; for the purpose of vending commodities in either of the streets mentioned in the first section of this ordinance; and every such person, on being so ordered, shall remove from out of said streets." Responding to the objection that this ordinance was partial because it did not operate upon all of the citizens of the commonwealth equally, but made a distinction between the citizens of Boston and its vicinity and the inhabitants of distant towns in the commonwealth, the court said: "We cannot think that there is any weight in this objection. A regulation of this description could hardly be framed so as to avoid a partial operation arising from local

situation and other circumstances. But the partial operation of the ordinance can be no objection to its validity, providing it does not infringe private rights, and it is very clear that it does not. The city government had an undoubted right to prohibit the occupation of a stand in the streets by any one, or by any one not having a license or permission for that purpose from the clerk of the market. In the case of *Vanderbilt* v. *Adams. Treasurer of N. Y. Hospital,* 7 Cow. (N. Y.), 349, it was decided that an act authorizing the harbor masters to regulate and station vessels in East and North rivers in New York, and imposing a penalty for disobeying their orders, extends to wharves in the hands of private owners, and is not unconstitutional, but is valid as a police regulation. There is certainly nothing contained in the ordinance in question which can be pretended to operate as a violation of private rights; nor does it operate as an improper restraint of trade, but is a wholesome regulation of it, to prevent the market from being unnecessarily thronged and incumbered." 28 Mass., 168, 171. In *Louisville* v. *Roupe,* the Kentucky court of appeals had under consideration a controversy wherein the following facts appeared : An act amending the charter of the city of Louisville authorized the mayor and council, by ordinance, to define the offense of forestalling, regrating, or engrossing, and more effectually to suppress the same by adequate fines and penalties. The tenth section of an ordinance relating to the market prohibited, under a penalty of $20, the sale or offer for sale within any of the

market houses, and during market hours, of articles of provision or other kind of marketing which was sold, purchased, or forestalled at any place within the city. The eleventh section of the same ordinance prohibited, under a penalty of $4, any person residing within the city from occupying any part of the market house, during market hours, for the purpose of selling, or offering for sale, any provisions, or any kind of marketing, except vegetables of their own growth, meat of their own slaughtering, or flour, meal or sausage of their make. The court said, in considering the question thus raised: "The question is whether the city council have power to prohibit and punish the sale, in market by a citizen, of marketing articles not produced or prepared by himself. The prohibited act implies necessarily that the articles have been, by some means, collected for the purpose of selling them in the market, which, in reference to particular articles, might constitute regrating or engrossing. It furnishes, also, a presumption that the articles have been purchased or contracted for on their way to market which may constitute the offense of forestalling. It may tend, also, to enhance the price in market, which is the great evil apprehended from each of those offenses, and the city council has power to extend the definition of the offense for the very purpose of preventing this evil. We are of opinion, therefore, that the selling at market of articles not produced or prepared by the vendor is so closely connected with the offenses mentioned in the statute, even according to their definition by com-

mon and statute law, and constitues so palpable and con-
venient a means of committing those offenses, if they do
not constitute the offenses themselves, that under the
power of defining and suppressing them the mayor and
council were authorized to prohibit and denounce penal-
ties against such selling; and that, even if they might
have included in the prohibition other persons besides
citizens, they were not bound to do so.   Wherefore, as
the evidence proved without contradiction, that the de-
fendant, a resident of the city of Louisville, did on the
day mentioned in the warrant sell in the market, in
market hours, large quantities of turkeys, chickens, eggs,
etc., and was in the habit of doing so on other market
days, and there was no evidence, nor upon these facts
any presumption, bringing him within the exception in
the ordinance, if as to all the articles he could be brought
within the exception, we are of opinion that judgment
should have been rendered against him for the penalty,
and that the police court erred in dismissing the war-
rant." 45 Ky., 593.

There can be no doubt of the validity of the ordinance
in the present instance, because it falls directly within
the terms of the charter of the city.

There is no basis for the complaint of unlawful dis-
crimination because the complainants belong to a dis-
tinct class from those persons permitted by the city to
sell; the complainants being those who would violate the
law by forestalling and regrating the market, and those
permitted to sell being the reverse, those who are the

producers of provisions and who sell them to consumers at first hand.

The ordinance is not rendered inoperative by the fact that the State and county have granted a huckster's license to each of the complainants. That would not authorize them to violate a city ordinance. *Commonwealth v. Fenton,* 139 Mass., 195, 29 N. E., 653; *Commonwealth v. Ellis,* 158 Mass., 556, 33 N. E., 651. Moreover, under their huckster's license, the complainants can sell other things besides the kinds of provisions referred to.

Affirm the decree of the chancellor, with costs.