Argued October 23; affirmed November 21, 1933

## CANCILLA ET AL. *v.* GEHLHAR ET AL.
### (27 P. (2d) 179)

*Gus C. Moser* and *Richard Sleight,* both of Portland, for appellants.

*Willis S. Moore,* of Salem, Assistant Attorney General (I. H. Van Winkle, Attorney General, on the brief), for respondents.

CAMPBELL, J. This is a suit in which plaintiff questions the validity of chapter 382, Oregon Laws, 1933, commonly known as the "Produce Dealers and Peddlers Act".

Plaintiff contends that the act is invalid for the reasons: (1) That it was never legally enacted; (2) that it violates section 20, Article I, of the Constitution of Oregon; (3) that it violates the Fourteenth Amendment to the Constitution of the United States.

The circuit court upheld the validity of the act and plaintiffs appeal.

1. It would be no value to the profession or to the public to give a lengthy analysis and explanation of the history of the act from the time it was first introduced in the House of Representatives as a bill, until it was finally filed and enrolled in the office of the secretary of state as an act.

The complaint regarding its passage is made that the act, as it now appears enrolled in the secretary of state's office and in the Oregon Laws, 1933, does not contain the following clause:

"Any person not permitted by the laws of Oregon to acquire, possess or own real property or any interest therein, shall not be a 'grower' as to any produce, grown on or in the soil; and provided further: * * *"

Appellants claim that such clause was in the bill at the time it was passed by the Senate and that the journals of the legislative houses show that fact. It is

not merely a question of what the journals may show or what the enrolled bill contains; it is a question of what were the actual facts regarding its enactment. In arriving at our factual conclusions, we must always bear in mind the presumptions of law by which the records of a coordinate branch of the government are hedged about. The records and the evidence indicate that the law was legally enacted in the form in which it now appears on file in the secretary of state's office in accordance with the constitution. However, the clause, which appellants contend was a part of the bill at the time it was enacted, in no way affects appellants and is not of sufficient importance to cause the whole bill to be declared invalid even if appellants' contention be correct.

Appellants admit that the parts of the act of which they make complaint were properly and legally enacted. The clause in dispute could be regarded as a mere clerical error.

2. Appellants are wholesale and retail peddlers of fruits and vegetables and other farm products of a similar nature.

Section 1 (d) of the act defines a "grower" as:

"* * * any persons engaged in the business of growing or producing any produce; * * *"

Section 1 (k) of the act defines a "wholesale produce peddler" as:

"* * * any wholesale produce dealer who goes from place to place or from store to store carrying for sale and offering for sale, or exposing for sale produce from any vehicle which shall stand on any portion of any street or highway or upon any property adjacent thereto without the written permission of the owner of such property, provided that a grower shall not be deemed to be a wholesale produce peddler within the

purpose of this act. The term 'wholesale produce peddler' also means any 'wholesale produce dealer' standing in any 'public market'."

Section 1 (1) defines a "retail produce peddler" as:
" * * * any person, principal or agent who goes from place to place or from house to house carrying for sale and offering for sale or exposing for sale at retail or to restaurants, hotels or public institutions, any produce from any vehicle which shall stand on any portion of any street or highway or upon any property adjacent thereto without the written permission of the owner of such property, provided that a grower shall not be deemed to be a retail produce peddler within the meaning of this act."

The effect of these provisions is to make a distinction between the man who sells by peddling what he has produced on his farm and the man whose business is buying and peddling what others produce.

Section 2 of the act provides the manner and way in which applications for a license to handle farm products may be made.

Section 3 fixes the fee schedule.

"For the applications herein described, each applicant must pay at the time of filing the application a fee as follows:
*        *        *        *        *

"(g) Growers—$1 and a like amount for each additional truck used.

"(h) Wholesale Produce Peddlers—for vehicles carrying less than one ton of produce, $50; for vehicles carrying more than one ton of produce, $100, and a like amount for each additional vehicle.

"(i) Retail Produce Peddlers—without a vehicle or using a vehicle carrying less than one ton of produce, $25; for using a vehicle carrying in excess of one ton of produce, $50, and a like amount for each additional vehicle.
*        *        *        *        *

"Growers shall not be required to procure a license hereunder, but may be so licensed upon the application of such grower and on the issuance of a grower's license, such grower shall be issued a grower's identification card. A regular employee of any licensed grower shall not be required to procure a license hereunder; provided, (1) that he carries with him written authorization signed by such licensed grower stating that he is such employee and authorizing him to act as such and to make on behalf of such grower such statements as are required by section 5 of this act; and, (2) providing such licensee's license and/or license plates and/or such identification card be displayed and/or carried as required for wholesale produce dealers and/or wholesale produce peddlers and/or retail peddlers as the case may be; (3) that such motor vehicle, if any, so used shall be the property of the licensee and is licensed in the name of such grower; and (4) that such grower or his regular employee does not transport or handle in any manner any produce other than produce of such grower."

■ Appellants contend that these sections of the act create an unjust discrimination and grant favors to the grower in violation of Article I, section 20 of the Constitution of Oregon, which reads as follows:

"No law shall be passed granting to any citizen or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens."

Also that it violates the Fourteenth Amendment to the Constitution of the United States, which reads as follows:

"* * * No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

The courts have held, almost unanimously, that those who produce the food of the nation are in a class by themselves. No people could long endure without the tiller of the soil, "the man with the hoe". Our food is directly connected with our health. To provide for its sale and distribution under sanitary conditions; to prevent regrating the market; to prevent an unnecessary spread between the price paid the producer and that which the consumer pays, and to encourage and stimulate the business of the food producer, is a legitimate exercise of the police power of the state. The classification made by the statute is reasonable. It is not an unjust discrimination to fix a different license fee for, or even to exact no license fee from, the man distributing by peddling the products of his labor from the land he tills, than that required of one who merely peddles that which he buys from the producers. Many reasons could be assigned in support of this differentiation. *Kansas City v. Overton,* 68 Kan. 560 (75 P. 549) ; *Anderson v. Thomas,* 144 Or. 572 (26 P. (2d) 60).

Appellants do not complain that the amount of the fee is burdensome or unjust, but that it is unjust to exempt the grower.

"* * * A legitimate reason for excluding agricultural and farm products and nursery products from the operation of the law may be found in the fact that they are closely related to food products often sold for immediate consumption, and that in ordinary practice persons engaged in the sale of such chattels are not generally far from where they are known and have a local habitation, so that remedies against them are easily available. It is not so necessary to regulate or supervise individuals who only peddle as a rule in their own immediate neighborhood as it is those who come from other states, or from distant points in this state, are generally unknown in the communities where they

engage in business, and are gone permanently in a few days. We are not authorized to disturb the classification made by the legislature unless it is clearly arbitrary and beyond reason.'' Ex Parte Case, 70 Or. 291 (135 P. 881, 141 P. 746, Ann Cas. 1916B, 490).

''The real test of the validity of defendant's objection to this statute is not whether the classification is wise and just, but whether the legislature acted arbitrarily—whether, without an adequate determining principle, it made a division of peddlers into two classes, and then sought to deprive one class of their constitutional right to the equal protection of the laws. If there is a genuine and substantial distinction between persons who go from house to house, and place to place, vending their own products, and those who sell in the same manner the productions of others, the classification is founded in the nature of things, and is therefore upon a basis everywhere recognized as lawful. Now, there is, in our opinion, such a marked and material difference between the two classes of peddlers as to make it entirely proper for the legislature, acting on considerations of general policy, to tax one class, and to permit the other to go free. The man who goes about the country selling what he has himself produced may be presumed to confer a benefit upon the general public, by eliminating the profits of the retail merchant, and perhaps even those of the wholesaler and jobber. * * * And, in addition to all this, it must be remembered that the sale of his products is only incidental to the business of producing them.'' Rosenbloom v. State of Nebraska, 64 Neb. 342 (89 N. W. 1053, 57 L. R. A. 922).

We do not believe any one will question the soundness of the principles above announced. These principles apply with greater force to the man who, by his labor and ownership (either in fee or leasehold) of the soil, produces the food that sustains us.

''It is further alleged that allowing persons who raise their own produce to sell the same from the

wagons without license, and refusing to allow persons who do not raise the produce which they offer for sale the right to sell from their wagons without license, is an unlawful and unjust discrimination between the complainants and the citizens last referred to. * * * There is no basis for the complaint of unlawful discrimination because the complainants belong to a distinct class from those persons permitted by the city to sell; the complainants being those who would violate the law by forestalling and regrating the market, and those permitted to sell being the reverse, those who are the producers of provisions and who sell them to consumers at first hand.'' Dutton v. Knoxville, 121 Tenn. 25 (113 S. W. 381, 130 Am. St. Rep. 748, 16 Ann. Cas. 1028).

We must not close our eyes to the present economic condition of the farmer. We cannot fail to observe the strenuous efforts being put forth by the state and nation to lessen the financial difficulties with which the agriculturist is confronted. It is conceded by all economists that the prosperity of those whose labor produces our meat and bread, our fruits and vegetables, our textiles and tobaccos, are, and always will be, the foundation on which the general prosperity of the whole country must rest.

3. Appellants further contend that because section 5 of the act provides in effect, that when produce is being transported by vehicle upon the highways for the purpose of sale or resale it must be accompanied by a manifest showing the date and place of loading and the kind and quantity of each parcel, the names and addresses of the consignee and consignor, and requiring the person in charge of such shipment to show, or, if required, furnish a copy of such manifest, on demand of any of the law enforcing officers, it places such an unbearable burden upon them as to practically destroy

their business. The answer to this is that if they become licensees under the act that burden is not required to be borne by them. The same section also provides that:

"Vehicles operated by any licensee shall not be required to carry the manifest mentioned herein, but such licensees shall in lieu thereof, make such reports or such manifest and to give such information in regard to transportation of produce as the department shall direct; * * *"

When section 5 of the act is read as a whole, it means that all persons, who are not licensed as peddlers engaged in the transportation of produce upon the public highways, must have the manifest required; those who operate under a license are only required "to make such reports or such manifest and give such information in regard to such transportation of produce as the department may direct". But appellants contend that this leaves too great a discretionary power in the hands of the department and that the department may unjustly discriminate between growers and peddlers. They do not complain that the department has attempted or threatens to exercise arbitrarily or unjustly this discretionary power. The authority thus conferred on the department must be exercised in a reasonable manner. The same argument could be made against any law. The enforcing officers might act in an unreasonable manner in its enforcement. The courts will not anticipate unreasonable methods or arbitrary action, in discharging the duties imposed by law, on the part of the executive or administrative branches of the government. The act itself provides a means for the protection of peddlers against such arbitrary or unjust action on the part of the

department. Section 10 of the act specifically enumerates the authority of the department in cancelling or refusing an applicant a license and section 11 provides:

"Any action of the department with reference to the granting of, or the refusal to grant, or to renew any license, or with reference to the revocation or suspension of any license granted under the provisions of this act, may be reviewed by any court of competent jurisdiction * * *."

Nor does this section confer legislative power on the department. It goes no further than to provide a method by which the department may discover facts necessary for the proper execution of its duties in enforcing the law. No authorities need be cited in support of the general rule of law that under our political system the duties devolving on the three branches of government, legislative, executive and judicial, are separate and distinct. Neither branch has the right to infringe on, nor assume, the duties of either of the others, nor has either the authority to delegate the powers conferred on it to either of the others. However, it is sometimes difficult to determine with exactness where the legislative function ends and the executive or administrative begins.

"Where a statute is incomplete as legislation and authorizes an executive board to decide what shall and shall not be deemed an infringement of the law, it will be held unconstitutional as importing to make an improper delegation of legislative authority." 6 R. C. L. 165.

Testing the statute under consideration by this rule, we find it complete within itself. It provides for the licensing of certain persons therein defined. It leaves to the department no discretion to deny to any one a

license who conforms to its terms. It provides the conditions under which produce may be transported by persons without a license. It provides that the department may make certain rules and regulations regarding the transportation of produce by licensees. These rules of course must be reasonable and uniform.

"A legislature in enacting a law complete in itself, designed to accomplish the regulation of particular matters falling within its jurisdiction, may expressly authorize an administrative commission within definite valid limits to provide rules and regulations for the complete operation and enforcement of the law within its expressed general purpose." 6 R. C. L. 178; State v. Briggs, 45 Or. 366 (77 P. 750, 78 P. 361, 2 Ann Cas. 424); White v. Mears, 44 Or. 215 (74 P. 931).

Briefly stated, the part of the act of which appellants complain divides peddlers of farm produce into two classes, growers and non-growers. Non-growers must take out a license. Growers may or may not as they choose. If a grower does take out a license he is charged a lower fee than the non-grower. If he does not take out a license, then while transporting farm produce he is subject to law governing any other non-licensed transporter of farm produce on the public highways.

The decree of the circuit court will be affirmed. It is so ordered.

BEAN and KELLY, JJ., did not participate in this decision.