EDGAR H. HOTCHKISS, TRUSTEE, APPELLANT, V. MOSES H. KECK ET AL., APPELLEES.*

FILED MAY 21, 1909.   No. 15,696.

1. **Injunction**: TITLE TO OFFICE.  Under the facts stated and discussed in the opinion, injunction will not lie to test the right of rival claimants to the possession of a public elective office.

2. ———.  The extraordinary writ of injunction is one of the last resorts of the litigant, and its aid should not be invoked unless it clearly appears there is no adequate remedy at law.

3. ———: PLEADING.  Where the aid of an injunction writ is sought to be invoked to prevent the commission of an unlawful act, facts must be pleaded which affirmatively show the party against whom the writ is directed has threatened to, or is about to, commit an act that is unlawful.

APPEAL from the district court for Saunders county: BENJAMIN F. GOOD, JUDGE.  *Affirmed.*

*Clark & Allen,* for appellant.

*G. W. Simpson* and *H. Gilkeson, contra.*

DEAN, J.

This is an injunction suit tried on demurrer in Saunders county.  Edgar H. Hotchkiss, who is plaintiff and appellant, and one J. P. Moor were elected as trustees for a term of two years at the annual election of the village of Valparaiso held in April, 1906, and duly qualified as such officer.  In April, 1907, Moses H. Keck and Ellis Nance, defendants, and one William Scott were regularly elected and qualified as trustees for a like term.  Some

---

* Reversed on rehearing.  See opinion, 86 Neb. ——.

time before January 1, 1908, Scott resigned, and no person was appointed to fill the vacancy thus created. Shortly before the spring election in 1908, V. E. Brown, J. W. Pokorny and A. C. Tucker were regularly placed in nomination by a local political organization, called the "citizens party," for the position of village trustees. A rival political organization placed in nomination W. C. Elmelund, A. G. Glassburn and J. M. Jamison for the same positions. The citizens party filed its certificate of nomination with the city clerk, but failed to designate therein which of its candidates was nominated for the unexpired term. The rival organization in its certificate of nomination designated Elmelund and Jamison as candidates for the full term and Glassburn for the unexpired term. The ballot used at the ensuing election made no distinction of any sort as among the candidates, except that it was bracketed or so prepared and spaced as to indicate that Brown, Pokorny and Tucker were the candidates of the citizens party, and Elmelund, Glassburn and Jamison were the candidates of the opposing organization. There was no indication of any sort upon the ballot as a guide whereby the elector could determine which of the candidates upon either ticket were nominated for the unexpired term and which for the full term, and no distinction in this regard was made by the voters on the day of election when they indicated upon the ballot their choice of candidates. The following vote was polled by each candidate: Brown 72; Pokorny 75; Tucker 78; Elmelund 79; Glassburn 73; and Jamison 73. On April 11, 1908, the board of trustees, upon canvassing the election returns, finding it impossible to determine from the returns for whom the electors voted to succeed to the unexpired term and for whom they voted for the full term, "by formal action refused to issue certificates of election to Pokorny and Tucker, or any of the candidates, and refused to permit the defendants or any of the candidates to take their seats as officers of the board." On April 17, 1908, "the defendants Keck and Nance, with-

out giving notice to plaintiff, pretended to call a special meeting, and, together with defendants Pokorny and Tucker, pretended to organize and act as a board of trustees, selecting defendant Keck as chairman. On the first day of May, 1908, the defendants pretended to hold another special meeting, of which plaintiff had no notice," at which meeting they assumed to perform some of the functions pertaining to their positions as trustees. At the first regular meeting in May the plaintiff and J. P. Moor "were in attendance at the hall where the meetings of the board are held, for the purpose of performing their official duties as trustees, but the defendants Keck and Nance refused to sit and act with them, asserting that they intended to recognize Tucker and Pokorny in place of plaintiff and said J. P. Moor; that these defendants, together with the defendants Pokorny and Tucker, are attempting to forcibly exclude the plaintiff from the possession of his office, and will so continue unless restrained by the order of this court; that the board never issued certificates of election to Pokorny, nor has it declared the said defendants elected to the position of trustees, nor any other person or persons, and the plaintiff since his election has been and now is in possession of the office of trustee  *  *  *  in pursuance of his statutory duty to serve until his successor is elected and qualified; that he has duly qualified to serve as a hold-over officer by subscribing to and filing with the clerk of said village the oath required by law." After pleading the foregoing facts, the plaintiff prays that the defendants be enjoined from interfering with him "in the discharge of his official duty as trustee of said village, or attempting to forcibly dispossess the plaintiff or disturb him in the possession of said office until it be determined by proper legal proceedings whether Pokorny and Tucker, or either of them, are entitled to the office claimed; that pending the hearing of this cause a temporary injunction issue restraining the defendants and each of them from in any manner obstructing the plaintiff in the performance of his official

duties as trustee, and from attempting to dispossess him of his office by force or in any manner except the institution of legal proceedings to obtain the title and possession of said office." Attached to the petition as an exhibit, and forming a part thereof, there is a certificate of the village clerk showing that on April 11, 1908, the village board, consisting of the plaintiff and Ellis Nance and M. H. Keck, chairman of the board, appellees herein, and J. P. Moor, canvassed the vote and found that Pokorny, Tucker and Elmelund had received the highest number of votes cast at the election. The record shows that a motion was then made by the plaintiff that certificates of election be issued to Elmelund, Glassburn and Jamison. Upon roll call, two trustees voted for the motion and two against it. So far as the record discloses, no action other than the above was taken by the board with reference to the incumbency of the office involved.

To the petition the defendants Tucker and Pokorny demurred for the following causes: "(1) The court has no jurisdiction of the subject matter of this action. (2) The plaintiff has no legal capacity to sue. (3) The petition does not state facts sufficient to constitute a cause of action." The court sustained the demurrer, and, the plaintiff electing to stand upon his petition, the action was dismissed, and the plaintiff appeals.

The plaintiff relies upon the allegation in his petition "that he had duly qualified to serve as a hold-over officer by subscribing to and filing with the clerk of said village the oath required by law," and says the writ ought to be granted "until it be determined by proper legal proceedings whether Pokorny and Tucker, or either of them are entitled to the offices claimed." It may be suggested, in passing, that there is no allegation in the petition, nor is there anything in the record to indicate, that the plaintiff or any other person had commenced, or even contemplated the commencement of, legal proceedings to test the rights of the respective parties to the possession of the office in suit. The plaintiff pleads a legal conclusion

in the allegation "that these defendants * * * are attempting to forcibly exclude the plaintiff from the possession of his office, and will so continue unless restrained by the * * * court." Counsel for plaintiff cites authorities which hold that a restraining order in a proper case may lawfully issue to protect an incumbent in the possession of his office from unlawful encroachment by an intruder or an attempt by a usurper to forcibly eject him therefrom, but the authorities cited have no application to the present case, because there is not a fact pleaded, nor is one pointed out in the record, which bears the slightest resemblance to an attempt on the part of any person "to forcibly exclude the plaintiff from the possession of his office."

After a careful examination of the record, we conclude the learned counsel for plaintiff have mistaken the remedy to be applied to the facts pleaded. Neither the statute nor the authorities sustain their position. Section 64, ch. 26, Comp. St. 1907; *Osborn v. Village of Oakland,* 49 Neb. 340; *State v. Mayor,* 28 Neb. 103; 1 Spelling, Injunctions and other Extraordinary Remedies (2d ed.), sec. 620; *People v. Draper,* 24 Barb. (N. Y.) 265; *Willeford v. State,* 43 Ark. 62; *Burgess v. Davis,* 138 Ill. 578. MAXWELL, J., speaking for this court in *State v. Mayor,* 28 Neb. 103, says: "If an injunction may be granted to restrain a person declared to be entitled to the office * * * then it may be granted to restrain the governor of the state, duly elected, from being inducted into office or performing the duties thereof, and on various pretexts this might be continued until his term expired, and, if the power is once admitted, it may be sought against every elective officer in the state, and thus the machinery of the courts, which is designed to protect and enforce rights, will become the means by which a party not entitled to an office could retain possession of the same and keep the one elected thereto out of possession. * * * The statute has provided an adequate remedy, either by contest or *quo warranto,* for the settlement of

the rights of parties in election cases, and those remedies are exclusive." Under our form of government, and on grounds of public policy, the administration of the functions of public office should not be held in abeyance for any purpose, but should at all times be in the active control of an incumbent. To yield to the contention of the plaintiff would be to sanction the partial paralysis of an arm of muncipal government, to which we cannot give our assent.

Finding no error in the record, the judgment of the trial court is in all things

AFFIRMED.