Argued February 7, decided March 7, rehearing denied April 4, 1911.

## BENNETT TRUST CO. *v.* SENGSTACKEN.

[113 Pac. 863.]

MUNICIPAL CORPORATIONS—CREATION—GENERAL LAWS—ORGANIZATION
OF CORPORATIONS—PROVISIONS CONSTRUED AS DIRECTORY.

1. Laws 1909, c. 39, relating to the incorporation of ports, and by
section 8 requiring that the commissioners appointed by the Governor
shall meet on the fifth day after their appointment at a place designated
by the Governor and organize as a board, is directory in its provisions,
and where four of the five commissioners meet at the specified place
and time and effect a temporary organization, and two days later at a
different place effect a permanent organization, there is a substantial
compliance with the statute.

MUNICIPAL CORPORATIONS—CREATION—STATUTE—VALIDITY.

2. Laws 1909, c. 39, entitled, "An act to provide for incorporation
under general law of ports in counties bordering upon bays or rivers
* * and to provide for the manner of incorporating such ports, and
defining the powers of ports so incorporated, and declaring an emergency,"
is constitutional.

STATUTES—TIME OF TAKING EFFECT—EMERGENCY CLAUSE NOT NECES-
SARY TO SET OUT FACTS AUTHORIZING EMERGENCY.

3. Section 28, Article IV, Constitution of Oregon, provides that no
act shall take effect until 90 days from the end of the session at which
it was passed, "except in case of emergency, which emergency shall be
declared in the preamble or in the body of the law," and as modified
by the amendment to Section 1, Article IV, the use of the emergency
clause is confined to laws necessary for the preservation of the public
peace, health, or safety. Laws 1909, c. 39, declares by section 10, "it
is hereby adjudged and declared that existing conditions are such that
it is necessary for the immediate preservation of the public peace, health
or safety ; therefore an emergency is hereby declared to exist, and this act
shall take effect * * after its approval by the Governor." *Held*, that
the legislature has the exclusive power to declare an emergency without
setting out the facts creating the emergency.

STATUTES—VALIDITY—APPROVAL OF EXECUTIVE.

4. Section 15, Article V, Constitution of Oregon, provides that every
bill passed by the legislature shall be presented to the Governor for
signature, but that, if he does not approve it, he shall return it with his
objections to the House where it originated, and that any bill not
returned within five days shall be a law without his signature, unless
a general adjournment shall prevent its return. The act to provide for
the incorporation of ports in counties (Laws 1909, c. 39) declaring, by
Section 10, an emergency, and that the act should take effect upon
approval by the Governor, was not returned by the Governor within five
days, but was filed without his approval with the Secretary of State
before a general adjournment. *Held,* that the process of making it a
law was complete when the Governor did not return it to the House
whence it originated within five days from the date it was presented to
him, and that all its provisions, including the emergency clause, became
effective at the end of the five days.

EVIDENCE—JUDICIAL NOTICE—OFFICIAL PROCEEDINGS AND ACTS—RETURN
OF BILL BY GOVERNOR.

5. Under Section 729, L. O. L., the court must take judicial notice
that an act of the legislature was presented to the Governor, and that
he did not return it within five days to the house in which it originated.

MUNICIPAL CORPORATIONS—OFFICERS—CONSTITUTIONAL AND STATUTORY
PROVISIONS—TERM OF OFFICE — COMMISSIONERS OF INCORPORATED
PORTS.

6. Laws 1909, c. 39, § 8, providing that two of the five commissioners
of an incorporated port shall hold office until the 1st of January follow-
ing the succeeding general election, and that the remaining three shall
hold office until the 1st of January following the second general election,
does not violate Section 2, Article XV, of the Constitution of Oregon,
limiting tenure of officers created by the legislature to four years, as
that section must be read in connection with Section 12, Article II, which
provides that an appointment *pro tempore* shall not be reckoned as a
part of a term, and under which the appointment of the commissioners
for the first term was a *pro tempore* appointment.

MUNICIPAL CORPORATIONS—CONSTITUTIONAL AND STATUTORY PROVISIONS
—COMMISSIONERS OF INCORPORATED PORTS—"OFFICERS."

7. The commissioners of incorporated ports appointed under Laws
1909, c. 39, § 8, who are vested with the power and authority given to
corporations organized under the act, are mere agents for the perform-
ance of certain duties defined by the act, and are not "officers" within
the meaning of Section 2, Article XV, of the Constitution of Oregon,
limiting the tenure of officers appointed by the legislature to four years.

MUNICIPAL CORPORATIONS—INCORPORATION—ELECTIONS.

8. Laws 1909, c. 39, § 3, providing that the judges and clerks of elec-
tion shall return the canvass of the special election for the proposed
incorporation of a port to the county clerk, is directory, and a return
of the canvass by one of the judges or clerks in accordance with the
general election law (Section 3328, L. O. L.) is a sufficient compliance
with the requirement as to the return.

MUNICIPAL CORPORATIONS—RETURN AND CANVASS — CERTIFICATE AND
PROCLAMATION OF ELECTION—CONCLUSIVENESS.

9. Where the notices of a special election under Laws 1909, c. 39,
relating to the organization of incorporated ports, are required to be
given as in cases of general elections, in accordance with Section 3307,
L. O. L., but there is no requirement of a return by the clerks of election,·
certifying performance of the duty of posting notices, the county court's
proclamation of the result as shown by the return, and establishment
of a port as a municipal corporation, is largely ministerial, and in view
of the fact that plaintiffs took no action until long after the proclamation
of the result, and that it had no direct effect on their property rights,
is conclusive as against collateral attack.

OFFICERS—INJUNCTION—MUNICIPAL OFFICERS.

10. Injunction will not lie to determine whether commissioners of
incorporated ports under Laws 1909, c. 39, rightfully hold such offices.

OFFICERS—INJUNCTION—SCOPE OF REMEDY—REMEDY BY QUO WAR-
RANTO.

11. Section 366, L. O. L., providing that an action at law may be

maintained in the name of the State, upon an information of the prosecuting attorney, or upon the relation of the private party against the person offending, when any person shall usurp or unlawfully hold any public office, or any office in a corporation, either public or private, created under the authority of the State, or when persons act as a corporation without being duly incorporated, affords an adequate remedy at law to determine whether commissioners of incorporated ports appointed under Laws Or. 1909, c. 39, have title to their offices; and hence a suit in equity for an injunction will not lie.

OFFICERS—DE FACTO OFFICERS—COLOR OF TITLE—COMMISSIONERS OF INCORPORATED PORTS.

12. Where an election has been held on petition under the provisions of Laws 1909, c. 39, relating to the organization of incorporated ports, and the return has been certified to the county court, and it has declared the result and proclaimed the organization of the port, and commissioners are thereupon appointed by the Governor, who organize and assume to act as a board, such commissioners are *de facto* officers whose acts have color of authority.

From Coos: JOHN S. COKE, Judge.

Statement by MR. JUSTICE BURNETT.

This is a suit by the Bennett Trust Company, a corporation and the Southern Oregon Company, a corporation, against Henry Sengstacken, J. C. Gray, W. P. Evans, E. Mingus and W. C. Harris. The facts as disclosed by the record are as follows:

At the twenty-fifth regular session of the legislative assembly of this State that body enacted a law entitled, "An act to provide for incorporation under general law of ports in counties bordering upon bays or rivers navigable from the sea, or containing bays or rivers navigable from the sea, and to provide for the manner of incorporating such ports and defining the powers of ports so incorporated and declaring an emergency." Laws Or. 1909, p. 78, c. 39. Section 2 of the act provides a form of petition to be addressed to the county court within whose county the territory of the proposed port is situated, asking for an election at which the question of the incorporation of the port may be submitted to the legal voters of the territory to be included in the boundaries of the port. Under Section 3, if, on examination of

the petition, it appears therefrom that it contains the names of eight per cent of the legal voters of the district, the "county court shall call a special election to be held within such proposed district, to be held not less than forty days, or more than sixty days, as such court shall determine." No complaint is made anywhere in the proceedings before us that the election in question here was not held more than one day; hence only this passing notice will be given to that point. The judges and clerks appointed by the county court for the preceding general election are required to officiate in their respective capacities at the special election thus called. Again, in section 3 it is required that "the polls shall be kept open between the hours provided for in cases of general elections and notice of the time of such special election shall be posted in each polling precinct in which such measure is to be voted upon in like manner as is provided for in cases of general elections. The judges and clerks shall return the canvass of the vote, together with the ballots cast to the county clerk of the county in which the election is held, and on the seventh day after the election the county court shall hold a special session and proceed to canvass such vote, and if upon such canvass it appears that a majority of the votes cast at such special election have been cast in favor of such incorporation such county court shall cause to be entered upon the journal of such court a proclamation," according to a form set out in said section. Under section 6 from and after the date of the proclamation made by the county court that portion of the county embraced in the limits defined by the proclamation is declared to be a municipal corporation with sundry powers, among which are the issuance of bonds and the levy and collection of taxes. Section 8 provides, in substance that the power and authority given to corporations organized

under the provisions of this act is vested in and specially exercised by a board of commissioners, five in number, each of whom shall be a qualified voter within the limits of said corporation. Within ten days after the issuance by the county court of the proclamation above mentioned, the Governor shall appoint a board of five commissioners, qualified as aforesaid, who are required to meet at such place within the limits of said corporation, as the Governor shall designate, on the fifth day after the appointment, and to organize as a board. The term of office of commissioner shall be determined by lot at the first meeting of the board. Two shall hold office until the first day of January next following the succeeding general election, and the remaining three shall hold office until the first day of January following the second general election. Afterwards they are regularly elected for the term of four years at the general elections. Section 10 reads thus:

"It is hereby adjudged and declared that existing conditions are such that this is necessary for the immediate preservation of the public peace, health and safety; therefore, an emergency is hereby declared to exist and this act shall take effect and be in full force and effect from and after its approval by the Governor."

Without affirmatively approving or disapproving the act in question, the Governor filed it in the office of the Secretary of State February 12, 1909. The session of the legislative assembly at which the act was passed ended February 20, 1909. All things of which plaintiffs complain, from the signing and filing of the petition to and including the organization of the board of commissioners, occurred between February 12 and May 12, 1909. The pleadings agree that a petition signed by more than eight per cent of the legal voters of the proposed port district was presented to the county court at the first day of the March term, 1909, and that thereupon the county

court ordered a special election to be held April 19, 1909. The complaint alleges in substance, that there are 45 judges and 45 clerks in the precincts included in the proposed port district; that the county clerk mailed two notices of the special election to each of the judges and clerks, 180 in all, but that 19 of the election officers residing in various precincts "wholly failed to post the notices of said special election as required by law," and alleges on information and belief that 23 others residing in various precincts "failed to post any notices of said special election, as by law required or otherwise or at all"; that one judge posted only one notice in his precinct, and that in six precincts the notices were posted by persons not election officers. The plaintiffs further charge that the election returns were forwarded to the county clerk in the manner provided by general election laws, but not as provided for by the port law; that on April 21, 1909, the county clerk, together with two other persons whom the evidence shows were justices of the peace, opened the envelopes containing the returns and "did, without authority of law, tamper with said returns; that is to say, did meddle therewith and did interest or engage themselves unnecessarily and impertinently therewith," etc., the effect of which is alleged "to create an uncertainty as to the true outcome of the election, * * and did render the election void." In this connection it appears from the evidence that, having received the election returns, the county clerk in the manner provided by the general election laws took to his assistance two justices of the peace of the county and made abstracts of the votes as disclosed by the returns, but it does not appear anywhere, either in the pleadings or in the evidence, that any ballot or election return was changed in the least or that any fraud was practiced by any one having anything to do with the election or the returns or the canvass.

It appears from the pleadings and evidence that on April 26, 1909, the county court of Coos County made and entered of record on the county court journal an order and proclamation in the form prescribed by section 3 of the law in question, proclaiming and declaring that part of Coos County described in the original petition to be duly and legally incorporated as a municipal corporation under the corporate name of the "Port of Coos Bay." The form of the proclamation, too long to reproduce in full here, contains a recital of the submission to the people of the question of incorporating the port, a statement of the vote for and against the proposition, and a declaration of the establishment and existence of the port as a municipal corporation. The vote was found by the returns of the election to be 992 for and 221 against the incorporation of the port. On May 5, 1909, the Governor of Oregon, in pursuance of the proceedings above described, appointed the five defendants as commissioners of the port of Coos Bay, designating Marshfield as the place of meeting. The complaint charges that on May 10, 1909, all the defendants except Evans met at Marshfield, elected Mingus chairman *pro tem* and Sengstacken secretary *pro tem*, and adjourned to meet at the same place on May 12th at 10 o'clock A. M. At the adjourned meeting Evans was again absent so the four still further adjourned to and did meet at 1:30 P. M. of that day at Evans' room in North Bend, within the territorial limits of the port, where, all five being present, they elected Evans president of the board, Mingus vice president, Sengstacken secretary, and Gray treasurer, and ever since then have claimed to be the duly appointed, qualified, and acting commissioners of said port of Coos Bay. Afterwards, in September, 1909, according to the complaint, the defendants, claiming to act as such board of commissioners, enacted an ordinance set out in full in the complaint, providing for the issu-

ance of $500,000 in bonds of the port to mature in lots of $25,000 each, annually, in from 20 to 40 years after date, with interest at five per cent, payable semiannually, but making no provision to raise funds for their payment, either by taxation or otherwise. By the terms of the ordinance "the avails and proceeds from the sale of such issue bonds shall be expended in the improvement, promotion, extension and betterment of the conditions of navigation and in the development of the maritime and commercial interests of said port in manner as permitted by the general laws of the State of Oregon." The plaintiffs, as taxpayers on real and personal property subject to taxation within the boundaries of the port, allege that defendants have advertised and are about to dispose of said bonds; that all this will constitute a cloud on their title to their said real property; and that they have no plain, speedy, or adequate remedy at law.

The complaint concludes with a prayer that the defendants be perpetually enjoined from making, executing, issuing, or delivering any bond or bonds whatsoever, and from taking any step or steps towards the assessment, levy, and collection of any tax or taxes upon the plaintiffs' real property for any purpose whatever; that the defendants be restrained from acting as the board of commissioners for the attempted port of Coos Bay; that the bill, or port law, be declared unconstitutional and void; that the defendants be held to have no power or authority by virtue of the proceedings referred to or by virtue of said port law; that the proceedings had for the proposed port of Coos Bay be declared null and void; and for general relief, together with costs and disbursements. The answer consists of sundry denials, so that, as far as the pleadings and findings are concerned, the contest in the circuit court seems to have been waged on the question of the regularity of the election of April 19, 1909, considering the fact, as found by the circuit

court, that in every precinct some of the notices of election, 46 in all out of 180, were not posted. After a hearing on the issues between the complaint and answer, the circuit court made findings of fact and conclusions of law and entered a decree dismissing the suit, and the plaintiffs have appealed.                    AFFIRMED.

For appellants there was a brief and an oral argument by *Mr. Joseph W. Bennett.*

For respondents there was a brief and an oral argument by *Mr. Cassius R. Peck.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. Except for the suggested irregularity in the organization of the board, in that such organization was completed at North Bend on May 12th instead of at Marshfield on the 10th, within five days after the appointment of the commissioners by the Governor, the plaintiffs ground their complaint entirely on matters accruing before the county court, by its order of April 26, 1909, proclaimed the establishment of the port. Otherwise, so far as the record discloses, the proceedings were carried on and culminated in the passage of the ordinance providing for the issuance of bonds in the same manner as if they had not been commenced until 90 days after the close of the session of the legislature at which the general act was passed. The provisions of the statute already noticed about time and place of organization are manifestly directory in nature and effect, and it is a sufficient observance of the law if these requirements are substantially complied with. The record shows a substantial compliance with the statute in that respect, and so far as the mere organization of the board is concerned after the appointment by the Governor, no ground of complaint exists. 2 Lewis' Suth. Stat. Const. (2 ed.) §§ 612-616; End. Interp. Stat. §§ 436, 437.

2. It is also urged in the complaint, in the brief of the plaintiff and in argument, that the act in question is unconstitutional, but that matter has already been set at rest by the decision of this court in the case of *Straw* v. *Harris,* 54 Or. 424 (103 Pac. 777).

3. Plaintiffs contend that section 10 of the act already quoted, containing the emergency clause, is insufficient in point of law to give immediate effect to the act which otherwise would not be in force until 90 days after the end of the session of the legislature which enacted the law. Section 28, Article IV, of the Constitution of Oregon provides that "no act shall take effect until ninety days from the end of the session at which the same shall have been passed, except in case of emergency; which emergency shall be declared in the preamble or in the body of the law." This section was materially modified by Section 1 of the same article of the constitution as amended by the plebiscite at the election of June 2, 1902, so as to confine the use of the emergency clause to laws necessary for the immediate preservation of the public peace, health, or safety. The argument of plaintiffs' counsel on this point is analogous to the rule of pleading requiring a statement of facts from which a court may be able to draw a desired conclusion of law. In such cases it is conceded to be insufficient, in point of law, merely to plead such conclusion without stating the facts authorizing it. Counsel would apply this argument to the case in hand so as to require the legislative assembly to set out in detail the ultimate facts it relied upon as authorizing the declaration of an emergency, in order that a court called upon to construe the act may consider the facts as alleged by the legislative assembly, not to call in question the truth of the legislative statement of facts, but to determine whether the emergency is a proper conclusion to be drawn from such facts. But no such strict

rule hampers the legislative branch of the state government. It has the exclusive power to declare that its enactments are necessary for the immediate preservation of the public peace, health, or safety, and that hence an emergency exists on account of which the act shall take effect when the legislative process, as applied to the act in question, is fully completed. In the case of *Dallas v. Hallock*, 44 Or. 258 (75 Pac. 204) the emergency clause under consideration reads thus:

"Inasmuch as it is necessary for the immediate preservation of the public health and public safety of the inhabitants of the said city of Dallas, that the provisions of this act should become effective at the earliest possible time, an emergency is hereby declared to exist, and this act shall be in force and effect from and after its approval by the Governor."

This court there, following its earlier decision in *Kadderly v. Portland*, 44 Or. 118 (74 Pac. 710: 75 Pac. 222), sustained the emergency clause in question. Following those precedents we determine that the emergency clause here is sufficient to put the act providing for the incorporation of ports into effect according to the terms of section 10 of the act.

4. But it is said that this act was to take effect from and after its approval by the Governor, and that, no affirmative approval having been signified by the Governor, the act never could take effect, at least not until 90 days after the end of the session at which it was enacted. Section 15, Article V, of the constitution provides that "every bill which shall have passed the legislative assembly shall, before it becomes a law, be presented to the Governor; if he approve, he shall sign it; but if not, he shall return it with his objections to that House in which it shall have originated." If, after reconsideration, two-thirds of the members of both Houses

shall agree to pass the bill, it shall become a law. The section further provides:

"If any bill shall not be returned by the Governor within five days (Sundays excepted) after it shall have been presented to him, it shall be a law without his signature, unless the general adjournment shall prevent its return, in which case it shall be a law, unless the Governor within five days next after the adjournment (Sundays excepted) shall file such bill, with his objections thereto, in the office of the Secretary of State, who shall lay the same before the legislative assembly at its next session in like manner as if it had been returned by the Governor.

In *Biggs* v. *McBride,* 17 Or. 640 (21 Pac. 878: 5 L. R. A. 115), the act there in question had an emergency clause requiring the act to take effect from and after its approval by the Governor. The Governor vetoed the the bill, and the legislature passed it over his objection. In that case this court, in substance, held that the act took effect when the lawmaking power had done every act or thing necessary under the constitution to its complete enactment as a law.

5. The same principle applies here. Considering the Governor as a part of the legislative power by virtue of his prerogative to approve or object to any act of the legislative assembly, yet the constitution gives effect to his inaction, as well as to his affirmative action, in such cases. As already stated, the twenty-fifth regular session of the legislative assembly ended February 20, 1909. Taking judicial notice, as we must under Section 729, L. O. L., of the public and private official acts of the legislative and executive departments, we know that the act in question, having passed the legislative assembly, was presented to the Governor; that he did not return it within five days to the House in which it originated, but, on the contrary, delivered it to the Secretary of State February 12, 1909. The Governor was not prevented from returning the bill by the general adjournment of the

legislature, for that did not happen until eight days thereafter. Under such circumstances the constitution expressly says the bill shall be a law without his signature. We conclude that in respect to the act in question the legal process of making it a law was complete when the Governor did not return the bill to the House whence it originated within five days from the date it was presented to him, and that all its provisions, including the emergency clause, became effective at once on the completion of that process.

6. It is further contended that this act is unconstitutional, in that it provides for offices the tenure of which shall be longer than four years, thus violating Section 2 of Article XV of the constitution. Conceding that these commissioners are officers within the meaning of that section, yet it must be read in connection with Section 12 of Article II, which states that "in all cases in which it is provided that an office shall not be filled by the same person more than a certain number of years continuously, an appointment *pro tempore* shall not be reckoned a part of that term." The design of the act empowering the Governor to appoint the first commissioners was simply to establish a temporary arrangement for beginning the work provided for in the act, and the appointment by the Governor should be considered a *pro tempore* appointment within the meaning of the constitution. The act further provides that "no commissioner shall either directly or indirectly receive any salary or compensation for his services as a commissioner, or for acting as an officer of the said corporation." Section 8.

7. The general effect of the act in question is to make these commissioners mere agents for the performance of certain duties defined by the act, and they are not officers within the meaning of the constitution, prescribing that the tenure of an office shall not be more than

four years: *David* v. *Portland Water Co.,* 14 Or. 98 (12 Pac. 174) ; *State ex rel.* v. *George,* 22 Or. 142 (29 Pac. 356: 16 L. R. A. 737: 29 Am. St. Rep. 586) ; *White* v. *Mears,* 44 Or. 215 (74 Pac. 931).

8. By the provisions of the act already quoted the judges and clerks are required to return the canvass of the vote, together with the ballots cast, to the county clerk of the county in which the election is held. In that connection the complaint alleges "that the judges and clerks of said special election did not return the canvass of the vote, together with the ballots cast thereat, to the county clerk of said Coos County, Oregon, in which said county said special election was attempted to be held; but these plaintiffs do allege that said returns left the possession of said judges and clerks of election, and were forwarded to the county clerk of said county in the manner provided for by the general election laws of the State of Oregon, but not in accordance with said port law." The law governing general elections requires that "one complete set of the tally sheets and the pollbook which was kept by the second clerk, ballots and stubs, ballot boxes, and remaining supplies, shall be forthwith conveyed by one of the judges or clerks of the election, to be agreed upon for that purpose by the judges, to the county clerk of the county." Section 3328, L. O. L. It is admitted by the complaint that the election returns of the election in question were thus forwarded to the county clerk. The effect of the argument of counsel for plaintiffs is that all the judges and all the clerks should unite and attend in carrying the election returns to the county clerk. If the statute in question were capable of that construction, yet, in the absence of fraud or corruption, none of which appears, we hold that such provision would be merely directory. Equity looks to the substance, and not to the form. For all that appears here the returns reached the county court pure and undefiled,

and truthfully disclosed the result of the election.    The plaintiffs' objections on that ground are not well founded.

9. We come now to the principal contention in the case, that of the validity of the election in question. Counsel for plaintiffs pressed upon our attention the cases of *Marsden* v. *Harlocker,* 48 Or. 95 (85 Pac. 328: 120 Am. St. Rep. 786) ; *Guernsey* v. *McHaley,* 52 Or. 555 (98 Pac. 158), and *Roesch* v. *Henry,* 54 Or. 230 (103 Pac. 439), and insisted that those cases were decisive of this case and must inevitably lead to a reversal of the decree of the circuit court, on the ground that the election involved in this litigation was void.    All these three cases arose under and required a construction of what is known as the local option law, regulating the sale of intoxicating liquors.    In *Marsden* v. *Harlocker* it appeared that the county court of Coos County did not meet in regular or special session, or assemble at the place and time prescribed by law, for the purpose of ordering a local option election in pursuance of a petition therefor which had been filed with the county clerk, but that at different times and in different places the individuals composing the court had signed a memorandum purporting to authorize an election.    This court in that case held that by such separate actions of the individuals composing the county court no authority had been given for the holding of such an election.    The local option law requires that at least 20 days previous to an election ordered by the county court the county clerk shall deliver to the sheriff of the county at least five notices of the election for each election precinct of the county voting on the question, and it shall be the duty of the sheriff at least twelve days before the election to post such notices in public places in the vicinity of the polling place or places. Both the sheriff and the clerk are required to enter of record their compliance with the provisions of the section requiring the issuance and posting of such notices.    In

other words, both of said officers are required to make return to the county court of their proceedings respecting the giving and posting of the notices. In *Guernsey* v. *McHaley* it appeared that, although the county clerk had issued and delivered to the sheriff the requisite notices for the local option election none were posted in one precinct, in another the notices were posted for only eleven days, and in another only ten days before the election, and in another only three notices were posted, and these only for eight days. The election resulted in a small majority in favor of prohibition, and, in a suit brought by a firm of retail liquor dealers to enjoin the county court from making an order prohibiting the sale of intoxicating liquors in accordance with the election, the court held that the election was not sufficient to authorize the court to make the order. In *Roesch* v. *Henry* the rigor of the rule laid down in the preceding cases was somewhat modified. In that case the only defect in the posting of the notices was that the sheriff had posted only three instead of five notices in one precinct, but it was made to appear to the court that, if all the votes in that precinct had been cast against the prohibition of the sale of intoxicating liquors, yet in the whole county there would still have been a very considerable majority in favor of prohibition, and under those circumstances the court sustained the election.

Like the act in question here, the local option law requires a petition signed by a certain percentage of the legal voters, and upon the petition being presented in proper form the county court issues an order for the holding of an election. The local option law contains particular provisions about the manner of giving notice of an election, in that it requires the clerk to issue to the sheriff five notices for each precinct, and imposes upon the sheriff the duty of posting all these notices in the several precincts, and further calls for a return from

both of those officers as to their doings in that behalf. Under the law providing for the incorporation of ports, the county court makes the order for the election. It is required that notices of the time of such special election shall be posted in each polling precinct in which such measure is to be voted upon in like manner as is provided for in cases of general elections. In Section 3307, L. O. L., it is provided that "it shall be the duty of the county clerk, thirty days before any general or presidential election, and at least ten days before any special election, to prepare printed notices of the election and mail two of said notices to each judge and each clerk of election in each precinct; and it shall be the duty of the several judges and clerks to immediately post said notices in public places in their respective precincts," but nowhere is it provided that the judges and clerks of the election shall make any return to the county court of having performed the duty of posting the notices.

In the case at hand it appears that the clerk mailed the notices to the election officers as provided in Section 3307, L. O. L. The only response provided by the general election laws to be made to the notices sent out by the clerk is found in the returns of the election. We thus see, in the matter of giving and posting notices of the election, that there is quite a material difference between the provisions of the local option law construed in the three cases last above mentioned and the act in question in this case. Further, in the three local option cases above mentioned the injunction was sought before any action by the county court, in declaring the result of the election and making the order of prohibition. In the case in hand no action was taken by or on behalf of the plaintiffs until long after the county court had received the returns and proclaimed the result of the election, and the establishment and existence of the port of Coos Bay as a municipal corporation. A further distinction can be

drawn between the two cases in this: That the direct effect of the order of the county court in the local option cases declaring the result of the election and making an order of prohibition against the sale of intoxicating liquors would be to destroy the business of the plaintiff and make it unlawful to engage therein, whereas before the election they were engaged in lawful business. In this case the mere holding of the election and making a proclamation thereof by order of the county court had no direct effect on any property right of the plaintiff. The establishment of the port does not in itself necessarily imply taxation or appropriation of plaintiffs' property. They are possible secondary results, but the ports have other sources of revenue in charges for pilotage, towage, salvage, etc., which may be applied to the payment of the proposed bonds.

The elements authorizing action by the county court are different in the two cases. In the one the county court had before it, in the sheriff's return that he had failed to post notices in some instances, evidence that its authority to act was defective. In the other the only things giving the county court a right to act were the original petition praying for an election and the election returns sent in by the judges and clerks. The county court in the proceeding involved here had nothing else before it, and had no means provided by law for otherwise acquiring any information about the election. That court could not do otherwise than to act upon the materials which the law had provided for it, and, it having appeared by the returns of the election that a majority of the votes had been cast in favor of the incorporation of the port, the court could do nothing less than to proclaim the result in the form provided by the statute. In legal effect the law has lodged in the county court the power to order a special election, when a proper petition for that purpose has been presented to it, and,

further, when the returns of the election have come back to it by virtue of such an order, invests it with the further duty of proclaiming the result of the election and the establishment of the port as a municipal corporation. This action of the county court, although largely ministerial in its nature, is conclusive as against collateral attack: *Warner* v. *Myers*, 4 Or. 72; *People* v. *Willi*, 147 Ill. App. 207; *Woodard* v. *State*, 103 Ga. 496 (30 S. E. 422) ; *State* v. *Cooper*, 101 N. C. 684 (8 S. E. 134) ; *State ex rel.* v. *Vail*, 53 Mo. 97; *Gibson* v. *Twaddle*, 1 Cal. App. 126 (81 Pac. 727) ; *Hoy* v. *State ex rel.*, 168 Ind. 506 (81 N. E. 509).

10. For all that appears these defendants acted in manner and form, after the county court had declared the election just as commissioners would have done had the election been in all respects as required by law. What, then, is the real question to be determined here? It is to all intents and purposes whether or not the defendants properly hold the office of commissioners of the port. Injunction will not lie to determine that question. In *Biggs* v. *McBride* this court held that mandamus was not the proper proceeding to try the title to an office, and the principle there announced is equally applicable to an effort in that direction by injunction, for injunction is complementary to mandamus; the one being preventive, and the other affirmative, exercise of the power of the courts. As illustrative of the principle that injunction is not the proper remedy to try the title to an office, the following cases will be found instructive: *Fletcher* v. *Tuttle*, 151 Ill. 41 (37 N. E. 683: 25 L. R. A. 143: 42 Am. St. Rep. 220) ; *Arnold* v. *Henry*, 155 Mo. 48 (55 S. W. 1089: 78 Am. St. Rep. 556) ; *State ex rel.* v. *Withrow*, 154 Mo. 397 (55 S. W. 460) ; *People* v. *Dist. Court*, 29 Colo. 277 (68 Pac. 224: 93 Am. St. Rep. 61) ; *Cochran* v. *McCleary*, 22 Iowa 75; *Cozart* v. *Fleming*, 123 N. C. 547 (31 S. E. 822) ; *Davis* v. *City Council*, 90 Ga. 817

(17 S. E. 110) ; *In re Sawyer,* 124 U. S. 200 (8 Sup. Ct. 482: 31 L. Ed. 402) ; *People* v. *Elbert Dist. Court,* 46 Colo. 1 (101 Pac. 777) ; *Hotchkiss* v. *Keck,* 84 Neb. 545 (121 N. W. 579).

11. To reach the result desired by the plaintiffs the court is asked to override the exercise of a political power by a co-ordinate branch of the government in appointing these officers, and, having done so, to go still further and overturn in this collateral proceeding the order and proclamation of the county court of Coos County, a tribunal specially authorized to declare the result of an election which it confessedly had the power and authority to order, and, finally, to determine that the defendants had no title to the positions of commissioners of the port. We do not conceive that the equitable power of the court extends so far. If the plaintiffs would determine the title to the positions held by the defendants, recourse can be had to the remedy provided by Section 366, L. O. L., stating that "an action at law may be maintained in the name of the state, upon the information of the prosecuting attorney, or upon the relation of a private party against the person offending, in the following cases: (1) When any person shall usurp, intrude into, or unlawfully hold, or exercise any public office, civil or military, or any franchise within this State, or any office in a corporation either public or private, created or formed by or under the authority of this State; or \* \* (3) When any association or number of persons act within this State, as a corporation, without being duly incorporated." We conclude that the plaintiffs have a plain, speedy, and adequate remedy at law under this section for the grievances of which they complain, having which their suit in equity in this form will not lie.

12. We further conclude that, as disclosed by the record here, the defendants were at least *de facto* commissioners of the port of Coos Bay, and that their acts are valid so

far as described in the complaint here: *Leach* v. *People ex rel.,* 122 Ill. 420 (12 N. E. 726) ; *Merchants' Nat. Bank* v. *McKinney,* 2 S. D. 106 (48 N. W. 841). The mere fact, as disclosed by the complaint, that the defendants had passed an ordinance providing for the issuance of bonds, but without providing any means for their payment, whether by taxation or otherwise, does not necessarily involve any property right of the plaintiffs. It would be time enough for the plaintiffs to complain, if then, when the defendants shall attempt to levy a tax upon the plaintiffs' property for the payment of such bonds. These considerations render it unnecessary to go behind the returns of the election or to inquire whether or not the election was properly conducted in the manner of giving notice thereof.

The decree of the circuit court is affirmed, with costs.

AFFIRMED.

---

Motion to dismiss denied January 18, 1910.   Argued March 14.
decided April 4, 1911.

## JOHN P. SHARKEY CO. *v.* CITY OF PORTLAND.

[106 Pac. 331: 114 Pac. 933.]

APPEAL AND ERROR—DISMISSAL OF APPEAL—GROUNDS FOR DISMISSAL.

1. Where all the defendants jointly appealed from the entire decree, but one alone filed a brief, the appeal would not be dismissed because the other defendants did not join therein or file a separate brief, the most severe punishment that could be imposed being the denial to such defendants of the right to file a brief, and refusal of the privilege of appearing, by person or counsel, at the trial of the cause on appeal.

APPEAL AND ERROR—BRIEFS—EXCUSE FOR FAILURE TO FILE.

2. Where, on appeal by several defendants, one alone filed a brief and the others did not join therein, but counsel for the others filed an affidavit to the effect that he assisted in writing a brief in behalf of all defendants which he supposed had been printed and filed, until a motion to dismiss the appeal for failure to file briefs was interposed, and an affidavit by the attorney for the defendant which did file a brief, corroborated the other, such defendants would be allowed to file a brief and to be heard at the trial.

PLEADING—CURING DEFECTS—SUBSEQUENT DENIALS.

3. A party cannot rely upon allegations of his adversary to cure defects in his own pleading, when in a subsequent pleading he denies

Sig. 12

such allegations, and hence, where a complaint against a city and its contractors showed that a contract was regularly let for the improvement of a street, but did not allege that the city authorized unlawful acts of the other defendant contractors in appropriating plaintiff's dirt, excavated within the street lines, but the city, by justifying the action of the defendant contractors and expressly alleging that it and the defendants appropriated the dirt and had a lawful right to do so, by such averment cured the defect in the complaint, had not such allegations been denied in the reply.

MUNICIPAL CORPORATIONS—PROPERTY OWNERS—PROPERTY ABUTTING ON STREET.

4. An abutting owner on both sides of a street where an improvement is being made is the owner of the soil of a street in front of his lot to the center of the street, subject to the right of the city to improve the same for purposes of travel; and he does not become divested of his ownership by the mere act of the city and contractors in excavating it, in order to improve the street.

MUNICIPAL CORPORATIONS—PROPERTY OWNERS—PROPERTY ABUTTING ON STREET.

5. Under City Charter of Portland, § 375 (Sp. Laws 1903, p. 150), there cannot be a general plan of improvement embracing several streets; each improvement must stand alone, be petitioned for separately, and be improved under separate ordinance.

MUNICIPAL CORPORATIONS—PROPERTY OWNERS—PROPERTY ABUTTING ON STREET—REMOVING DIRT—LIABILITY.

6. Where earth owned by plaintiff was excavated from a street and disposed of for use on other streets, for the contractors' benefit, the contractors are liable to the abutting owner.

MUNICIPAL CORPORATIONS—STREETS—RIGHTS OF ABUTTING OWNERS—CITY OF PORTLAND.

MUNICIPAL CORPORATIONS — STREETS — ABUTTING OWNERS — REMOVING DIRT—LIABILITY—DAMAGES.

obtained for less, the decree for that amount against the defendant was proper.

From Multnomah:   WILLIAM N. GATENS, Judge.

Decided January 18, 1910.

ON MOTION TO DISMISS.

[106 Pac. 331.]

*Mr. Ralph R. Duniway,* and *Mr. A. E. Clark,* for the motion.

*Mr. John P. Kavanaugh, Mr. Frank S. Grant,* city attorney, and *Mr. William C. Benbow,* deputy city attorney, *contra.*