GRACE JENSEN, APPELLEE, V. CHARLES J. JENSEN, APPELLANT.

15 N. W. 2d 57

FILED JUNE 23, 1944. No. 31757.

*Ziegler, Dunn & Becker,* for appellant.

*J. M. Emmert, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

PAINE, J.

In an action by the wife for a divorce, the trial court dismissed the husband's cross-petition, and granted the wife an absolute divorce, with alimony in the sum of $21,886.10 and attorney's fees in the sum of $1,500. From this decree the defendant appeals.

Said decree also permanently enjoined defendant from transferring and conveying to any person any real or personal property owned by him, and enjoined defendant from

disposing of his stock or holdings in the Chris Jensen & Sons Realty Company, and further enjoined the defendant from transferring any of the real or personal property of said corporation, but provided that such injunction should not apply to defendant's personal checking account in the Omaha National Bank, which was under the name of the Omaha Wrecking Company, or his personal checking account in the Douglas County Bank of Omaha. It was further provided that said restraining order and injunction shall be dissolved only upon the payment of alimony to the plaintiff of $21,886.10, with attorney's fees and costs.

The errors relied upon for a reversal by the defendant may be summarized as follows: The court erred in the finding that the defendant's property is of the value of $70,-889.14, and entering judgment for alimony in the sum of $21,886.10; the court erred in basing its finding of alimony in favor of plaintiff on the gross value of defendant's property, and in refusing to take into consideration tax liens and indebtedness of the defendant and of Chris Jensen & Sons Realty Company; the court erred in issuing an injunction, upon filing of plaintiff's original petition, enjoining defendant from disposing of or transferring his property and from going to his home, and continuing said injunction until the alimony and attorney's fees are paid; the court erred in allowing attorney's fees in favor of plaintiff in the sum of $1,500, and said judgment and decree of the court is contrary to law and contrary to the evidence.

We will now present the main facts as disclosed by the evidence. The plaintiff is 56 years of age, and the defendant about the same. They were married in Omaha August 21, 1917, and neither had been married before. Two children were born to this union, a daughter, Mary Annalee, who is now 23 years old and married to Wendell Anderson, and a son, Sgt. Edward C. Jensen, of Company A, 381st Infantry, United States Army, stationed at Fort Lewis, Washington, at the time of trial. The son, being unmarried and aged 21 years, testified to the fine Christian character of his mother. The testimony of the plaintiff and the two

children amply supported the charge of extreme cruelty as alleged in the third amended petition.

The defendant has been more or less seriously ill since April 6, 1933, being afflicted with tuberculosis and diabetes, and has no chance at this time of being restored to good health. At the time of trial he was confined to the Douglas County Hospital, because that was the only Omaha hospital prepared to handle serious tubercular conditions. Defendant's evidence was taken by deposition, as he was too sick to appear in court.

It will be seen that the defendant is making no complaint against granting the wife an absolute decree of divorce. The argument of defendant is, however, addressed principally to these two points: That the value of defendant's property was fixed at much too high an amount, and the alimony judgment based thereon is excessive, as are the attorney's fees; that the granting of a temporary injunction on the same day the petition was filed, and continuing the said injunction in full force and effect after decree was entered until the decree for alimony had been paid in full, with plaintiff's attorney's fees, is an error on the part of the trial court warranting a reversal of such decree for alimony and injunction.

We will, therefore, examine the facts in reference to the financial conditions. Christian Jensen, father of the defendant, who died July 18, 1938, was a very successful business man, and incorporated the Chris Jensen & Sons Realty Company in 1909, with 400 shares of stock. This was a holding company, of which the father retained 398 shares and one share was issued to the defendant by his father, and the remaining share was issued to John A. Byrne, a half-brother of the defendant, a man 63 years of age, who was one of the original officers of said corporation, and testified that he had given all his time to looking after the interests of the corporation and working for it. He was supposed to get $100 a month, but in Item III in the will of Christian Jensen he was given $1,000 cash, the same to be in full of all sums due him for labor and services, and it was

further provided that he was to surrender his share of stock in said corporation, the same to be retired into its treasury as a condition precedent to receiving the $1,000 cash.

In Item VIII testator stated that he was the owner of the capital stock of said corporation, and also of the Omaha Wrecking Company, which was not incorporated. Such will, after making numerous bequests, made Charles J. Jensen the residuary legatee of all of the remainder of his father's property. Mr. Byrne testified he had not been paid anything for his services since Christian Jensen died, although he had continued to give all his time to looking after the varied business interests of the defendant.

It was stipulated between the parties that cash on hand, cash in banks, and deposits in the Omaha Loan & Building Association and liquid assets amounted to $36,680.90. The home at 909 North Forty-ninth street, Omaha, was inherited by the defendant from his mother's estate. A farm near Louisville, Nebraska, was valued at $3,500, and a farm near Modale, Iowa, was valued at $4,000, making a total of $11,-500 for these three pieces of real estate, or a total of $48,-180.90 for assets the value of which was undisputed.

There were, in addition, a large number of old brick and frame buildings in Omaha, including a three-story 40-room hotel building and the interest in a number of pieces of real estate belonging to the estate of Mary E. Jensen, his mother, in which the defendant owns a one-sixth interest, and all of these many pieces of real estate were given a value of $20,650 by the defendant Jensen and a value of $19,600 by Thomas F. Quinlan, a real estate expert called by the defendant, and a value of $25,783.34 by W. O. Larson, a real estate expert called by the plaintiff.

In the decree entered by the trial judge, the total value of the defendant's holdings was fixed at $70,889.14, from which it appears that the trial judge added a few thousand dollars to the defendant's value, and his final amount appears to be practically the average between the amounts reached by the two experts, and from a careful analysis of each of the many items making up these values we have reached the

conclusion that the trial judge gave a very patient and careful study to each and every item of real and personal property owned by the defendant and all of his interests therein, and we have reached the conclusion that the trial judge was right.

From this property, the trial judge directed that the plaintiff should be given a total amount of alimony of $21,886.10, which was practically 30 per cent of the defendant's holdings. In the alternative, the trial judge provided that the plaintiff, at her election, might take in lieu thereof $9,000 worth of the $20,000 worth of Omaha city and school district bonds in the safety deposit box, the $1,336.10 deposit of the defendant held in the name of the Omaha Wrecking Company in the Omaha National Bank, $2,550 due and payable on a land contract from the Miller Chemical Company, and the home place at 909 North Forty-ninth street, Omaha, valued at $4,000, together with the three-story brick building used as a hotel and rooming house, appraised by the defendant's appraiser at $5,000, these various items making a total of $21,886.10 at the value fixed upon them by the court in the decree.

The decree further provided that Charles J. Jensen was permanently restrained and enjoined from transferring or conveying to any person his money, stock, bonds, bank account, building and loan association account, personal or real property, or from transferring his stock in the Chris Jensen & Sons Realty Company, or from transferring any of the real or personal property of said corporation, which injunction should continue until the alimony and attorney's fees were paid, but it was specifically provided that the injunction should not apply to his personal checking account in the Omaha National Bank under the name of the Omaha Wrecking Company, or to his deposit in the Douglas County Bank of Omaha.

The defendant, instead of appealing, could have paid the alimony of $21,886.10 in cash out of his liquid assets of $36,680.90 standing in the name of the Chris Jensen & Sons Realty Company, the Omaha Wrecking Company, and in

his own safety deposit box, or if, on request, the plaintiff had elected to accept the alternative provisions provided in the terms of the decree, the bonds and the cash could have been turned over to plaintiff at once, and the title to the home and the hotel property transferred, and all of the remainder of the property would have belonged to the defendant, and in either case the injunction would have been dissolved at once by its terms if the attorney's fee had also been paid.

It is charged in the assignment of errors and argued in the brief that the judgment for alimony becomes a lien upon the property of the defendant, and is enforceable by execution, and the court was entirely without authority to enjoin the defendant from transferring any of his property, there being no evidence that the defendant had any such intention, and that the issuance of the injunction on the filing of the original petition, and the insertion of an injunction in the final decree, indicates a profound disregard of the principles of law recognized by this and other courts.

In this case it also appears that at the time of the trial the defendant owned every share of stock of the Chris Jensen & Sons Realty Company, and therefore that corporation, while owning title to many pieces of real estate and doing business with several financial institutions, was in reality the sole property of the defendant, and therefore plaintiff charges as proper for the trial judge to enjoin the defendant from transferring the capital stock of said corporation, or transferring the real and personal property owned by the corporation, as it was to enjoin the transfer of any other property owned solely by the defendant in his individual right. Therefore, we will consider the question whether in this particular case the fact that a judgment for alimony is a lien against the property of the defendant was a sufficient protection for the plaintiff's judgment in this case, in which practically all defendant's real and personal property stood in corporate names of which he was sole owner.

In regard to alimony, we find that prior to 1883 this

court had held that alimony judgments were not a lien on real estate (See *Swansen v. Swansen,* 12 Neb. 210, 10 N. W. 713; *Brotherton v. Brotherton,* 14 Neb. 186, 15 N. W. 347) and the legislature of 1883 enacted chapters 40 and 41, Laws 1883, to remedy this situation. Thereafter, it was held in *Wharton v. Jackson,* 107 Neb. 288, 185 N. W. 428, and *Lynch v. Rohan,* 116 Neb. 820, 219 N. W. 239, that a decree was a lien upon the real estate of the husband.

In *Bigelow v. Bigelow,* 131 Neb. 201, 267 N. W. 409, this court discussed the case of *Cizek v. Cizek,* 69 Neb. 800, 99 N. W. 28, and called attention to the fact that that decision had been rendered in 1904 and that in 1907 the legislature had enacted section 42-321, Comp. St. 1929, which law made it discretionary with the court to award to the innocent party a share or interest in the real estate of the guilty party.

Section 42-323, Comp. St. 1929, provides that the court may require the husband to give sufficient security for the payment of the alimony; that if he neglects to give such security, or pay such alimony, his real or personal estate may be sold as upon execution, and further provides that the court may also appoint a receiver to take charge of his real and personal property, or both, and hold the same, together with the rents and profits therefrom, for security for the payment of installments of alimony.

In *Bruening v. Bruening,* 143 Neb. 335, 9 N. W. 2d 399, it was said that the appointment of a receiver was a drastic remedy, and the orders therefor must be made in strict compliance with the statute.

In *Wolfe v. Wolfe, ante,* p. 55, 12 N. W. 2d 368, defendant sought to obtain an injunction to restrain the plaintiff from collecting payments of temporary alimony awarded to her. It was held that the trial court erred in failing to dismiss the defendant's petition for an injunction.

Upon granting an absolute decree, the trial court may assign the property, both real and personal, between the parties as the demands of justice and equity may require. See *Johnsen v. Johnsen, ante,* p. 208, 12 N. W. 2d 837.

The situation which caused the trial judge to issue the injunctions in the case at bar developed as follows: The original petition was filed March 2, 1943, and alleged that the defendant was about to transfer and convey certain property owned by him to another woman for the purpose of preventing plaintiff from having her lawful interest therein and from ever becoming in possession of said property, and that by reason thereof an injunction should issue preventing the defendant from transferring and conveying any property whatsoever owned by him to any person or persons, and the plaintiff took oath to the statements therein being true.

On March 2, 1943, the trial court entered a restraining order against the defendant molesting the plaintiff and forbidding him to go on the home property, and on the same day a restraining order was issued against the defendant, enjoining him from transferring or conveying to any person any of his real or personal property or that of the Chris Jensen & Sons Realty Company until further order of the court, and giving him ten days within which to show cause why said injunction should not become permanent.

On March 8, 1943, defendant filed a motion to vacate the temporary injunction on the ground that the court had no authority or jurisdiction to issue the injunction, and that the same is void and of no effect in that it was issued without notice to the defendant or opportunity for a hearing, and that the allegations of the petition were not sufficient to authorize or confer jurisdiction on the court to issue the injunction, and on March 11, 1943, the application of plaintiff for a temporary injunction and for attorney's fees and court costs came on to be heard upon defendant's motion to vacate the temporary injunction, and thereafter on March 13 a new order was entered, which enjoined the defendant from transferring any real or personal property of his own, or of the Chris Jensen & Sons Realty Company, or of the Omaha Wrecking Company, and further enjoined him from interfering with the plaintiff or her use or occupancy of the family home, and directed that he pay her $15 a week and

all utility charges in connection with the home, and pay temporary attorney's fees of $35 and court costs. This more extensive order of injunction provided that it should remain in full force and effect until further order of the court, and the temporary order of injunction issued March 2, 1943, was vacated.

The evidence of Carrie Lee was introduced for the purpose of supporting the defendant's motion to dissolve the restraining order enjoining defendant from transferring property. She testified that she had been the superintendent of nurses of the Douglas County Hospital since September, 1942, and prior to that had been a nurse there since 1936. She testified that the defendant had been in the tubercular hospital four different times, staying from two or three months up to six months at one time; that she had frequently been invited to the defendant's home by his wife, Mrs. Jensen; that the wife had given her a Christmas present of $25, and that, as he was in an advanced stage of tuberculosis, and his condition was serious, she had spent nights at his home to take care of him.

The inference from all of the evidence on this point appears to be that she was an excellent nurse, and became acquainted with the defendant, and she invited the Jensen family to her home at 2719 North Forty-fifth street, and that she was repeatedly invited to the Jensen home, and between September and December stayed there and helped take care of defendant during the nights for fear he might have a serious hemorrhage, and that she slept with Mrs. Jensen, and made no charge for her services in sleeping there at night while she was working at the Douglas County Hospital in the daytime.

The son, Sgt. Edward C. Jensen, testified that at least on two occasions when his father was not at the hospital he had seen his father's car in front of the residence of Carrie Lee, and that on these occasions his father did not return home until 11:30 or 12 o'clock at night. On one occasion, when the plaintiff was writing a letter for the defendant, he said, "Carrie could do this business better than you can for me."

Carrie Lee testified that she knew nothing of his holdings, and that he had never given her any presents, as all of the presents she had received came from his wife.

The defendant, to support his charge that the court was without any authority to grant an injunction in this case, cites seven Nebraska authorities. The first one cited is *Omaha Grain Exchange v. Spillman,* 118 Neb. 729, 226 N. W. 452, an action to enjoin the attorney general of the state of Nebraska from enforcing a law with regard to reshipment of grain in carlots as unconstitutional.

The second case cited is *Hotchkiss v. Keck,* 84 Neb. 545, 121 N. W. 579, which action involved a contest between the trustees of the city of Valparaiso as to who were duly elected to that position.

The third authority relied upon for reversal is *State Bank of Nebraska v. Rohren,* 55 Neb. 223, 75 N. W. 543, which involved a lease from a Seward bank to a farm in that county.

The fourth case cited by the defendant is that of *School District v. De Long,* 80 Neb. 667, 114 N. W. 934, and involved the payment of school taxes under protest.

In addition to these four cases, the defendant cites three divorce cases, one being *Cizek v. Cizek, supra,* which case has already been discussed herein, another being *Ford v. Ford,* 101 Neb. 648, 164 N. W. 577, which involved the appointment of a receiver.

The last of the seven cases cited by defendant on the injunction is *Kimbro v. Kimbro,* 73 Neb. 171, 102 N. W. 271, which seems to be taken up with a discussion of the alimony allowance of $5,500, and holds that it is excessive, and it is reduced to $2,500. These were all of the cases cited by the defendant in support of his proposition that the court was without authority to issue the injunction restraining the defendant from transferring his property, and, strictly speaking, not one of them appears to support the defendant's contention.

However, the general powers of an equity court are broad enough to cover any emergency which threatens to

place defendant's property out of the reach of plaintiff's judgment for alimony.

"There must be a proper showing for an injunction in the application. Peril to the fund or sufficient cause for belief that an unlawful disposition is to be made of the property out of which relief is sought must appear from the pleadings, or by evidence." 27 C. J. S. 1064, sec. 267d.

" * * * there seems to be no question of her right to an injunction, in a proper case, to restrain him from wrongfully interfering with the control or enjoyment of her separate estate, * * * ." 27 Am. Jur. 187, sec. 586.

In *Hagert v. Hagert,* 22 N. Dak. 290, 133 N. W. 1035, it was held that an injunction may be granted where it is necessary to prevent defeating the order of the court by alienation of property.

In *Harding v. Harding,* 120 Ill. App. 389, it was held that the court has ample power to enforce a decree for alimony by the appointment of a receiver, and likewise, if expedient, by injunction, either through a petition filed in the same suit or by a separate bill filed in the court which granted the decree. See *Kiplinger v. Kiplinger,* 172 Mich. 552, 138 N. W. 230.

"Courts of general jurisdiction have the inherent power to do all things necessary for the administration of justice within the scope of their jurisdiction." *Wassung v. Wassung,* 136 Neb. 440, 286 N. W. 340.

"As was stated by this court in *Earle v. Earle,* 27 Neb. 277, 43 N. W. 118: 'We are of the opinion that courts of equity should have and do have the jurisdiction to grant relief in cases of this kind without reference to the statutes of the state, but by and through the jurisdiction growing out of the general equity powers of the court.' " *Wassung v. Wassung, supra.*

We now reach the seventh assignment of error, that the court erred in allowing attorney's fees to the plaintiff in the sum of $1,500. The briefs present considerable argument, pro and con, about the amount of attorney's fees, which are claimed to be excessive. After the original peti-

tion was filed March 2, 1943, there were motions for temporary allowance, and restraining orders, and a constant succession of motions and hearings. In addition to the trial of the case, considerable time was spent in ascertaining the value of the defendant's property, which was in an unusual form,—but only one expert witness on real estate values was called.

Without citing cases, it is the rule that the attorney's fees allowed in a divorce case are subject to review by this court, and they must be reasonable in amount, and cannot be based solely upon the amount of the alimony secured.

We have made an examination of the nature of the case, the type of questions involved, the skill necessarily devoted to the preparation and presentation of these questions to the court, the amount involved and the results obtained, and the character and standing of the counsel in this rather protracted litigation, and have reached the conclusion that, under all the circumstances, the fee of $1,500 allowed in the lower court was rather liberal, and because of that fact no additional sum is allowed plaintiff's attorney for services in this court.

And finally, we will discuss the eighth assignment of error, that the judgment and decree is contrary to law. In this case, in which there was such a large amount of liquid assets, we find it would work no hardship on the defendant to fix the alimony at $21,886.10, to be paid at once in cash or bonds, but the decree then added, "that in lieu thereof, and at her election, the plaintiff may take"—then followed bonds, $9,000, and $1,336.10 bank deposit, $2,550 balance on land contract, the home at $4,000, the old hotel building for $5,000, total value, $21,886.10. After describing these items, the court added: "in the event, however, Grace Jensen, plaintiff, elects to take the moneys and property so designated, same shall be accepted by her in full and complete payment of the said alimony judgment in the sum of $21,-886.10."

In the opinion of this court, it was improper to enter such an alternative decree, giving the plaintiff an election

to choose between two forms of decree. The trial court should enter a definite decree for $21,886.10 alimony, and provide the time of its payment.

As thus modified, the decree of the trial court is affirmed.

AFFIRMED AS MODIFIED.